### ELLIOTT et al. v. ELLIOTT et al.

No. 13778.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 7, 1938.

Rehearing Denied Nov. 4, 1938.

632

Clem Calhoun, of Amarillo, and Hampden Spiller, of Fort Worth, for appellants.

H. S. Lattimore, of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

On June 28th, 1933, Sarah J. Elliott, a feme sole, surviving wife of John M. Elliott, deceased, and C. C. Elliott, son of said John M. and Sarah J. Elliott, executed to Ray Sheffey, a deed of conveyance to a tract of 1,451 acres of land situated in Castro County, Texas, with covenants of warranty of title. The consideration for that conveyance was $10 cash and the promissory note of the vendee, secured by a vendor's lien on the land conveyed, in the sum of $30,000, of even date with the deed, payable ten years after date, to W. P. McLean, Trustee, with interest at the rate of six per cent. per annum, payable annually, both principal and interest payable in Fort Worth, Tarrant County, Texas, with the usual ten per cent. attorney's fee clause.

After the death of Mrs. Sarah J. Elliott, her son, C. C. Elliott, under pleadings filed in his behalf by Judge Hal S. Lattimore, as guardian ad litem, under due appointment by the Court, recovered judgment for ⅘ths of the balance due on said vendor's lien note, and the Union Bank & Trust Company was awarded ⅕th interest in said balance, under an assignment of said interest to the Bank by W. P. McLean, Trustee. The judgment was rendered against Hodges McKnight, independent executor of the will and estate of Mrs. Sarah J. Elliott, and Joe H. Elliott and E. R. Elliott, sons of said Mrs. Sarah J. Elliott, and those sons have prosecuted this appeal from the judgment in favor of said C. C. Elliott. No appeal has been prosecuted by Hodges McKnight, as said executor.

The facts and issues involved in this appeal may be summarized as follows:

On October 4th, 1921, the sheriff of Castro County levied on and sold the property in controversy, as the property of the defendant, J. M. Elliott, to Benton R. Elliott. The sale was made under execution issued out of the District Court of Tarrant County, under a judgment in favor of M. F. Garrison and W. M. Odell, against J. M. Elliott and others. The consideration paid by the said purchaser, as recited in the deed, was the sum of $3,000. There was a finding of the jury that said Benton R. Elliott made said purchase for the purpose of carrying out a plan to which he and John M. Elliott were parties, to delay the creditors of John M. Elliott, and that the same had that effect. That issue was tendered in plaintiffs' pleadings.

Appellants allege that at the time of that purchase by Benton R. Elliott, he agreed with John M. Elliott to hold the title to the land for the exclusive use and benefit of Mrs. Sarah J. Elliott, but in answer to another special issue, the jury found that that allegation was untrue.

On August 29th, 1929, John M. Elliott and wife executed to Benton R. Elliott a quitclaim deed to the land in controversy. It was alleged in appellants' pleadings that at the time that deed was made, said Benton R. Elliott agreed with the grantors to hold the title to the land for the exclusive use and benefit of Mrs. Sarah J. Elliott, but in answer to special issue No. 6, the jury found that those allegations were untrue.

On September 2nd, 1930, B. R. Elliott executed his last will and testament, with this provision: "At my death, I give and will all my property to my mother during her life, and at her death, to go to my brother, Charles Culbertson Elliott." He died July 16th, 1931; the will was filed for probate January 9th, 1932, with the application for its probate, and was duly probated on October 7th, 1933, in the County Court of Tarrant County, Texas.

On December 28th, 1930, Mrs. Sarah J. Elliott executed a will, devising to plaintiff, Charles Culbertson Elliott, her homestead, and all the residue of her estate, in equal parts, to her four sons, viz., Charles Culbertson Elliott, Elam Russell Elliott, Benton Randolph Elliott, and Joseph Henderson Elliott. By codicil (undated) Hodges McKnight was named independent executor in lieu of the two executors theretofore appointed. The statement of facts shows an agreement of counsel that the will has been admitted to probate in the County Court, but that an appeal has been prosecuted to the District Court from the order of the County Court overruling the contest of the codicil appointing McKnight as independent executor, by Joe H. Elliott, and the appeal is still pending.

About fifteen months after the execution of the deed from Mrs. Sarah J. Elliott and C. C. Elliott to Ray Sheffey, W. P. McLean, named as Trustee in the vendor's lien note, executed by Sheffey in consideration for said sale, prepared the following instrument, which was executed by the parties thereto at his instance, towit:

"State of Texas, County of Tarrant

"Know All Men By These Presents:

"That whereas, Sarah J. Elliott is the owner of a ⅘ interest in one certain ven-

dor's lien note in the sum of $30,000.00 given as the purchase money for 1447 acres of land situated in Castro County, Texas, and being out of the East Side of League & Labor M 6, Block N-10-A, patented to R. T. Higginbotham. For more particular and definite description reference is here made to a certain deed, dated July 28, 1933, from Sarah J. Elliott et al., to Ray Sheffey, and recorded in the Deed Records of Castro County, Texas; and

"Whereas, Sarah J. Elliott desires at her death that her part of said note, or the proceeds derived therefrom, be divided as follows, towit: ¼ to her son, E. R. Elliott; ¼ to her son, Joe H. Elliott; and ¾ to her son, C. C. Elliott; and

"Whereas, the said Sarah J. Elliott and E. R. Elliott and Joe H. Elliott and C. C. Elliott are the only ones concerned in said settlement and in said distribution of said ⅘ interest in said note and the proceeds thereof; and

"Whereas, the said C. C. Elliott is entitled to a $1000.00 prior claim against said ⅘ interest in said note, together with interest thereon at the rate of 6 per cent per annum from the 19th day of July, 1931. It is mutually agreed for the benefit of each and all of the signers hereto that the interest derived from said ⅘ interest in said note shall be paid to Sarah J. Elliott during her lifetime for her use and benefit and that at her death said ⅘ interest in said note be divided, or the proceeds derived therefrom as above stipulated.

"We, Sarah J. Elliott, E. R. Elliott, Joe H. Elliott and C. C. Elliott, in the presence of the witnesses and signers hereto, do acknowledge the above distribution and partition of said ⅘ interest in said note is in accordance with our suggestions and our desires.

"(Signed)   S. J. Elliott
"E. R. Elliott
"Joe Elliott
"C. C. Elliott

"Witnesses:
"(Signed)   W. P. McLean to Joe H. Elliott
"Riley Strickland to E. R. Elliott
"Chas. H. Davis to S. J. & C. C. Elliott.

"At the request of E. R. Elliott, Joe H. Elliott and C. C. Elliott, I, Hodges McKnight, do hereby agree to act as trustee for the purpose of receiving the interest if, as and when paid, or any part thereof, upon said note, and to apply the same to the comfort, aid, support and necessities of Sarah J. Elliott and C. C. Elliott.

"(Signed)   Hodges McKnight.

"A copy of this agreement is to be deposited with the First State Bank of Arlington, Texas, for the inspection of all concerned."

In plaintiffs' petition it was alleged that that agreement on the part of plaintiff was void for lack of mental capacity to understand its meaning and legal effect; that he would not have signed the same but for the advice given him by his attorney, W. P. McLean; that said McLean advised him to execute it, in ignorance of the fact that John M. and Sarah J. Elliott had theretofore made the deed conveying the property to Benton R. Elliott, in 1929 (shown above); and that he would not have so advised plaintiffs had he known that said deed had been so executed and had been delivered and placed of record.

In answer to special issues Nos. 7, 8, 9 and 10, the jury sustained those allegations. In those issues the agreement was referred to as plaintiffs' exhibit No. 5.

In the first count of plaintiffs' petition, plaintiffs sought a cancellation of the deed made by him, with his mother, to Ray E. Sheffey, on the same grounds he attacked the agreement just quoted. But in an alternative plea, he sought to recover ⅘ths interest in the note, in lieu of such cancellation of the deed. And on the trial of the case, through his guardian ad litem, he elected to pursue the relief prayed for in his alternative plea, and no assignment of error is presented to that election of remedies.

In appellants' brief it is said that when Benton R. Elliott took the deed at sheriff's sale in the year 1921, he held the same as trustee for John M. Elliott and Sarah J. Elliott. It is further contended that such title as he acquired under the deed from John M. Elliott and Sarah J. Elliott, on August 29th, 1929, was impressed with the same trust, and that the title plaintiff acquired under the will of Benton R. Elliott was likewise charged with that trust, which was never repudiated but expressly recognized by him in the deed executed by himself and mother to Ray Sheffey. It is a well settled principle that the title acquired by Benton R. Elliott under the sheriff's deed in 1921, in fraud of creditors, was valid as against John M. Elliott and Sarah J. Elliott, and also as

against appellants, as their heirs. Hughes v. Hughes, Tex.Com.App., 221 S.W. 970. The deed thereafter executed to Benton R. Elliott by John M. Elliott and Sarah J. Elliott, in August, 1929, confirmed in Benton R. Elliott any possible title he might have in the land, especially so in view of the finding of the jury in answer to special issue No. 5, that at the time Benton R. Elliott acquired the sheriff's deed in 1921, he did not agree to hold the title for the exclusive use and benefit of Mrs. Sarah J. Elliott, and the further finding in answer to issue No. 6, that at the time the deed was made to him by John M. Elliott and Sarah J. Elliott, on August 29th, 1929, he did not agree to hold the title for the use and benefit of Mrs. Sarah J. Elliott.

■ It follows, then, that when the plaintiff joined with Sarah J. Elliott in the conveyance to Ray Sheffey, his mother, Sarah J. Elliott, had a life estate in the land conveyed, and the remainder was vested in plaintiff, C. C. Elliott. Upon the death of his mother, Sarah J. Elliott, the entire title was vested in plaintiff, C. C. Elliott, under the terms of the will of his brother, Benton R. Elliott. He then, through his guardian ad litem, had the right of election to claim a cancellation of the deed to his interest, which he could claim as against the purchaser, or he could elect to ratify the deed and claim the vendor's lien note then remaining unpaid, given in consideration for the land. Scarborough v. Blount, Tex.Civ. App., 154 S.W. 312; Eastham v. Roundtree, 56 Tex. 110; Rivera v. White, 94 Tex. 538, 63 S.W. 125; Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; 20 Tex.Jur., 454, and decisions there cited.

■ While the vendor's lien note for $30,000, executed by Sheffey in payment for the land, was made payable to W. P. McLean, as Trustee, with no stipulation for whose benefit he would hold the note, it was necessarily implied that it was for the benefit of the vendors named, and the memorandum endorsed on the note some months after he acquired it, that "Mrs. Sarah J. Elliott, of Arlington, Texas, owns an undivided ⅘ths interest in said note, and W. P. McLean owns an undivided ⅕th interest in said note", made by W. P. McLean, without the knowledge and consent of Sarah J. Elliott or C. C. Elliott, plaintiff, could not be given effect to determine the rights of either of the makers of the deed.

■ Nor could the plaintiff, C. C. Elliott, be bound by any of the terms of the agreement (Plaintiff's Exhibit 5), made some fifteen months after the sale, with respect to the interest of himself and the other parties to the instrument and the note in controversy, in view of the findings of the jury that at the time the instrument was signed he was mentally incompetent to understand the nature and effect of the instrument and of the circumstances under which he was induced to sign it.

■ In nowise did the plaintiff hold the interest devised to him by Benton R. Elliott in trust for his mother, Sarah J. Elliott, since the interest of the two was separate and distinct, and the only claim of title asserted by him in this suit was one he acquired under that will. Hence, there is no possible basis for the appellants' claim that the plaintiff, in joining with his mother in the execution of the deed to Sheffey, was but carrying out a trust theretofore existing in favor of his mother.

■ On August 29th, 1929, appellant, Joe H. Elliott, and wife executed a deed to Benton R. Elliott, to an undivided ½ interest in and to the south part of 2,891 acres of the east side of League & Labor Survey No. 6, Block M–10–A, in Castro County, Texas. The consideration recited in that deed was, "$10.00 to us paid by B. M. Elliott, as follows: For the purpose of dividing partnership land between us, and the assumption and agreement to pay the said B. R. Elliott ½ of the balance remaining unpaid of one certain promissory note for the original sum of $15,000.00, described in a certain deed of trust record, Vol. 10, page 549, of the Deed of Trust Records of Castro County, Texas."

On the same day, Benton R. Elliott executed a deed to Joe H. Elliott for "an undivided ½ interest in and to the north part of 2,891 acres out of the east side of League & Labor Survey No. 6, Block M–10–A, in Castro County." The consideration recited in that deed was, "$10.00 to me in hand paid, the receipt of which is hereby acknowledged, and for the purpose of dividing partnership land between us, and the assumption and agreement to pay by the said Joe H. Elliott ½ of

636

the balance remaining unpaid of one promissory note for the original sum of $15,000.00, described in a certain deed of trust, of record in Vol. 10, page 549, of the Deed of Trust Records of Castro County."

On the same date, John M. Elliott and wife, Sarah J. Elliott, executed to Joe H. Elliott, "All our right, title and interest in and to that certain tract or parcel of land, lying in the County of Castro, and State of Texas, described as follows, to-wit: Being the north 1,440 acres of the east 2,891 acres in League & Labor Survey No. 6, Block M–10–A, Patent No. 218, Vol. 22, and being the same land this day conveyed to Joe H. Elliott by B. R. Elliott, as shown by deed recorded in Vol. ——, page ——, of the Deed Records of Castro County, Texas."

On the same day, John M. Elliott and wife, Sarah J. Elliott, executed the deed mentioned above, to B. R. Elliott, to "all our right, title and interest in and to that certain tract or parcel of land, lying in the County of Castro and State of Texas, described as follows, towit: Being the south 1,451 acres of the east 2,891 acres of League & Labor Survey No. 6, in Block M–10–A, Patent 218, Vol. 22, and being the same land this day conveyed to B. R. Elliott by Joe H. Elliott and wife, Addie Elliott, as shown by deed records, recorded in Vol. ——, page ——, of the Deed Records of Castro County, Texas."

Since it is manifest that those instruments were made for the purpose of partition, there is no merit in the assignment complaining of the exclusion of testimony offered by appellants, to show those facts, and that no other consideration was paid therefor. It can not be said that deeds made for the purpose of partition are not binding for lack of consideration to support them.

Moreover, the record shows that, thereafter, appellants, Joe H. Elliott and E. R. Elliott, executed to Ray E. Sheffey quitclaim deeds to the property described in the deed to him from Sarah J. Elliott and C. C. Elliott, the deed so executed by Joe H. Elliott being dated August 16th, 1936, and that by E. R. Elliott being dated August 23rd, 1936.

■ J. R. Kennedy, as witness for the plaintiff, testified that Mrs. Sarah J. Elliott told him that she wanted C. C. Elliott to have her property after her death. Appellants objected to that testimony as hearsay. If there was error in its admission, the same was harmless, since, under the will of Benton R. Elliott, her interest in the land in controversy was terminated at her death, and therefore, could not have passed to C. C. Elliott, nor to appellants.

■ Dr. F. L. Harvey, a practicing physician, was introduced as a witness by the plaintiff. He testified that he was a graduated, practicing physician since the year 1901, and had known the plaintiff, Culbertson Elliott, around the town of Arlington, for twenty or twenty-five years; that he had observed him daily and regularly around the town; talked to him; practiced in the home of Sarah J. Elliott and Culbertson Elliott; that he had observed plaintiff enough to form an opinion of his mental capacity and ability to attend to business matters. He testified further as follows: "Q. Please state to the jury whether, in your opinion, Culbertson Elliott, in 1934, was mentally capable of attending to his own business and understanding the nature and consequences of papers and signatures to documents relating to the property and estate. A. He was not, I don't think, in my judgment." That testimony was objected to on the ground that it calls for a legal conclusion of the witness on an ultimate issue in the case.

E. C. King, another witness for the plaintiff, a layman, testified to the same opinion on his part, and appellants urged the same objection to his testimony.

In support of assignments, appellants cite Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; Williams v. Livingston, 52 Tex.Civ.App. 275, 113 S.W. 786; Milner v. Sims, Tex.Civ.App., 171 S.W. 784; Brito v. Slack, Tex.Civ.App., 25 S.W.2d 881; Jones v. Selman, Tex.Civ.App., 109 S.W.2d 1003. Appellee urges that those cases are not applicable to the testimony complained of here, and are distinguishable from other decisions which he cites as supporting the ruling in this case, such as Stewart v. Miller, Tex.Civ.App., 271 S.W. 311; Pickering v. Harris, Tex.Civ.App., 12 S.W.2d 686.

Without undertaking to determine whether or not the opinions of those witnesses are admissible as against the objection urged, we deem it sufficient to say that if the court erred in the rulings complained

of, the error was harmless, since the record shows conclusively that the plaintiff, C. C. Elliott, has been non compos mentis from the day of his birth, and unable to read or write or to work. Indeed, in the first paragraph of the answer filed by appellants in this suit, this is said: "Come now the defendants herein, by their attorney, and say that the plaintiff, C. C. Elliott, before and at the time of the commencement of this suit, was and still is so afflicted by disease in mind and body that he is incapable of caring for his interest in this litigation. That the said C. C. Elliott, plaintiff, is a non compos mentis, and this suit should be abated until some proper person is appointed by this court to look after his rights herein and to protect his interest, if any, in this litigation."

Moreover, it was conclusively established by the record that the only interest owned by Mrs. Sarah J. Elliott at the time she and plaintiff, C. C. Elliott, conveyed the land in controversy to Ray E. Sheffey, was the life estate devised to her by her son, Benton R. Elliott. That life estate having terminated at her death, was no part of her estate after her death. Hence, appellants acquired no interest in the property or purchase money note, as a part of her estate, as alleged in their pleadings, either by will or under the statutes of descent and distribution.

For the reasons stated, all assignments of error are overruled, and the judgment of the trial court is affirmed.