**GOLDEN VILLA NURSING HOME, INC., Appellant,**

v.

**Minnie Ellis SMITH, et al., Appellee.**

**No. C3029.**

Court of Appeals of Texas, Houston (14th Dist.).

April 5, 1984.

Rehearing Denied May 3, 1984.

Jay D. Hirsch, Anthony F. Montgomery, Hicks, Hirsch, Glover & Robinson, Houston, for appellant.

Harvill E. Weller, Jr., Krist, Gunn, Weller, Nuemann & Morrison, Houston, Alton C. Todd, Brown & Todd, Alvin, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

SEARS, Justice.

This is an appeal from a judgment awarding damages for personal injuries received by Appellees Minnie Smith and Amelia Oliver. We affirm.

The main issue to be determined is the standard of care owed by a nursing home to its patients to protect them from causing injury to themselves or others.

Minnie Smith was riding a motorcycle on Highway 35 in Brazoria County when Amelia Oliver, a patient at Golden Villa Nursing Home, Inc., darted on to the highway and knocked Smith and her motorcycle to the ground. Both parties suffered personal injuries. Smith sued Golden Villa for her injuries allegedly caused by Golden Villa's failure to provide proper care and supervision for Oliver. Appellee Cecelia Evans, daughter and court-appointed guardian of Oliver, joined in the lawsuit individually and as guardian of Oliver. She sued Golden Villa to recover damages for the injuries sustained by Oliver. The jury found Golden Villa seventy-five percent (75%) negligent, Smith twenty-five percent (25%) negligent, assessed no finding of negligence against Evans and Oliver and awarded damages to Smith and Evans, as guardian for Oliver.

The record reflects that Oliver, 68 years of age at the time of the incident, had been a resident of Golden Villa for five years. Oliver previously had resided in state institutions for over thirty years. The medical records of doctors who treated Oliver reveal that she suffered from vascular insufficiency, schizophrenia, senility, non-psychotic brain syndrome, confusion and a tendency to wander. Oliver's physicians recommended that she be placed in an intermediate care facility (I.C.F. III Facility). Evans complied with the recommendation and placed Oliver in Golden Villa.

The notations made by Golden Villa's doctors in Oliver's medical records revealed that she had a tendency to wander and that she had, in fact, previously wandered onto Highway 35. The doctors at times ordered temporary restraints to prevent the wandering. Subsequent periodic medical evaluations by Golden Villa's doctors revealed an increasing state of confusion and an increased tendency to wander. Based upon this and other information, Golden Villa's treating physicians set up a "total health care plan" for Oliver which called for close supervision to prevent her from wandering onto Highway 35.

Golden Villa Nursing Home is situated immediately adjacent to Highway 35, a

main artery of traffic along the Gulf Coast. The facility is fenced, with the fence located 20–25 feet from the edge of the highway. The fence gates are kept unlocked, pursuant to state and federal fire and safety regulations.

On the day of the accident Oliver was last seen on the porch outside the facility by one of Golden Villa's employees. Of the three employees on duty at the time of the accident, two were eating lunch and one was filling medication cups. No employee or agent of Golden Villa had seen Oliver for approximately an hour prior to the accident. During this unsupervised interval of time, Oliver left the porch, crossed the yard and exited through the unlocked gate. Seeing what she thought was money on the highway, Oliver darted on to the highway to pick it up and collided with the motorcycle driven by Smith.

In its first point of error, Golden Villa alleges the trial court erred in rendering judgment against it because as a matter of law it owed no duty to Oliver. In points of error two through six, Golden Villa alternatively argues the trial court erred in submitting an issue on whether it breached its duty to Oliver and in overruling various objections and motions it made because there was no evidence or insufficient evidence to establish that it breached any duty to Oliver. In its brief, Golden Villa specifically argues that its supervision of Oliver complied with applicable standards, statutes and regulations. In reviewing the matter of law, insufficiency of evidence and great weight points discussed here and later in this opinion, we have considered all of the evidence. On the no evidence points, we have considered only the evidence tending to support the findings. *See Associated Milk Producers v. Nelson*, 624 S.W.2d 920 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Golden Villa argues that it did not breach its duty to Oliver. It cites *Murphy v. Allstate Insurance Co.*, 295 So.2d 29 (La. Ct.App.), *aff'd*, 299 So.2d 787 (La.1974), for the proposition that although a nursing home is not the insurer of the safety of its patients, it does have a duty to provide a reasonable standard of care, but that this duty does not include having a one-on-one nurse/patient ratio or a regular nurse or attendant to follow the patient 24 hours a day. *Id.* at 34. We agree with this proposition. However, *Murphy* also establishes the proposition that a nursing home, while not an insurer, must consider each patient's physical and mental condition when formulating a standard of care for that individual patient and abide by that standard. *Id.*

The facts in *Murphy* are distinguishable from those in the present case. In *Murphy*, the nursing home was held not liable for the death of an elderly, senile patient who wandered away and was killed. The accident occurred only four days after the patient was admitted to the nursing home and there was no evidence indicating that the decedent's spouse told the nursing home of the decedent's tendency to wander. Furthermore, the physician attending the decedent left no specific instructions other than to see that the patient did not injure himself, and that the patient was to be attended by another person when leaving the premises. In other words, the patient's known mental and physical condition gave no indication that he was likely to wander. Therefore, the nursing home had no reason or duty to restrain him.

■ The opposite is true in this case. When Oliver was admitted to Golden Villa, her daughter told the owner and administrator about Oliver's tendencies to wander. Later, the administrator wrote a letter to Oliver's daughter describing an incident in which Oliver had wandered off of the nursing home property. Additionally, the nurses' records indicate that ten months prior to this accident Oliver had tried to walk across Highway 35. In that incident, she was stopped and, upon the treating physician's recommendation, was locked in her room behind "dutch" doors at night to prevent her wandering. Oliver's "total health care plan," previously discussed, contained an entry dated March 2, 1978, which stated, "Confused at times, wanders out of doors" and "patient will be supervised closely

when outside so she does not get near traffic." Obviously, Golden Villa knew of Oliver's tendency to wander, and, according to *Murphy,* was under a duty to take such tendencies into consideration in protecting and providing care for her.

Texas courts recognize that "It [is] the duty of a hospital to provide for the care and protection of its patients, and in the exercise of this duty the hospital [is] required to provide such reasonable care as the patient's known condition require[s]." *See e.g., Harris v. Harris County Hospital District,* 557 S.W.2d 353, 355 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). In other jurisdictions this hospital standard of care has been applied to nursing homes. For example, in Louisiana, "The same general rules apply to nursing homes as hospitals in defining the degree of care owed to patients." *Murphy v. Allstate Insurance Co.,* 295 So.2d at 34–35. Similarly, the court in *Nichols v. Green Acres Resthome,* 245 So.2d 544, 545 (La.Ct.App.1971), held "a nursing home does have a duty to provide a reasonable standard of care, taking into consideration the patient's mental and physical condition."

■ We hold that a nursing home in Texas is under a duty to exercise such reasonable care for a patient's safety as his known mental and physical condition may require. No general rule can be articulated, for this standard requires that a determination of what constitutes "reasonable care" be made in each individual case, taking into consideration the individual patient's known mental and physical condition.

■ Golden Villa alternatively argues that the care it gave to Oliver was the same degree of care, skill and diligence exercised by such homes of the same general type, in the same or similar community and under the same or similar circumstances. However, while conformity with the uniform customs of persons engaged in a like business may be considered as evidence of proper care, it does not preclude a showing that the custom itself tolerates negligence. *Air Control Engineering,*

*Inc. v. Hogan,* 477 S.W.2d 941, 946 (Tex. Civ.App.—Dallas 1972, no writ) (citing *Kuemmel v. Vradenburg,* 239 S.W.2d 869, 872 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.)). *See also* 40 TEX.JUR.2d *Negligence* § 36 (1976).

■ Other states have applied this principle to nursing home situations. In *Stogsdill v. Manor Convalescent Home, Inc.,* 35 Ill.App.3d 634, 343 N.E.2d 589 (1976), a patient in a convalescent home brought an action against the physician, the home, and a co-owner of the home for damages suffered when her leg was amputated as a proximate result of deficient convalescent care. The court held that "[T]he fact that the nursing care given was 'usual' or 'customary' would not, of itself, preclude the possibility of ... negligence...." *See also Lundahl v. Rockford Memorial Hospital Association,* 93 Ill.App.2d 461, 235 N.E.2d 671 (1968). We find that a mere showing of conformity with the nursing home industry custom does not preclude a showing of negligence and of breach of duty in specific situations. We overrule points of error one through six.

Golden Villa presents a similar argument in point of error thirty-two. It complains that an inspection report certified by the Deputy Commissioner of the Texas Department of Health was erroneously excluded from evidence. Appellant wanted to use this report to show that it had complied with Texas Department of Health regulations entitled "'*Minimum*' Licensing Standards for Nursing Homes." (emphasis added). Golden Villa cites *Dusine v. Golden Shores Convalescent Center, Inc.,* 249 So.2d 40 (Fla.Dist.Ct.App.1971), and *Alford v. Meyer,* 201 So.2d 489 (Fla.Dist.Ct.App. 1967), for the proposition that the duty a nursing home owes its residents is "determinable" from the appropriate statutes. The *Dusine* court, citing *Alford,* held that it was error to exclude from evidence nursing home rules and regulations, since a violation of rules which specify a minimum standard of care can provide a plaintiff with a prima facie case of negligence

against a nursing home. 249 So.2d at 41–42.

■ Golden Villa would have us believe that compliance with such rules establishes a prima facie case that a defendant nursing home fulfilled its duty of care to its patients, and, precludes a finding of negligence. However, this proposition is not established by either case. The title of the Texas regulations alone makes it clear that the Texas Department of Health considers compliance with such standards to be merely the minimum duty owed by a nursing home to its patients rather than a measure of the full duty owed. Under the rule stated in *Dusine*, introduction of the Texas Department of Health Regulations would not have precluded a negligence finding and would have been merely cumulative. Therefore, the error in excluding the evidence, if any, was harmless error. *Sherwood v. Medical & Surgical Group, Inc.*, 334 S.W.2d 520 (Tex.Civ.App.—Waco 1960, writ ref'd).

Golden Villa also argues in point of error thirty-two that expert testimony is necessary to establish the requisite standard of nursing home care applicable to patient supervision and to show any deviation from that standard, relying on *Gravis v. Physicians & Surgeons Hospital*, 415 S.W.2d 674 (Tex.Civ.App.—San Antonio 1967), *rev'd on other grounds*, 427 S.W.2d 310 (Tex.1968). Golden Villa argues that since it produced the only expert, and since his testimony allegedly was favorable to Golden Villa, then the judgment against it cannot be supported as a matter of law.

■ In *Gravis*, expert medical testimony was necessary to show that a medical operation was skillfully performed under an anesthetic which was properly administered. However, an exception to the rule that expert testimony is necessary was clearly recognized in *Harle v. Krchnak*, 422 S.W.2d 810, 815 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.), where the court stated that when "the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen ... the requirement of [expert] medical testimony is eliminated...." In *Harle*, the court held that expert medical testimony was not needed to prove the doctor was negligent in leaving a sponge inside the patient's body. This same distinction between specialized and routine medical care was made in *Cramer v. Theda Clark Memorial Hospital*, 45 Wis.2d 147, 172 N.W.2d 427 (1969), where the court held that a question of the propriety of leaving a patient unattended did not require expert testimony. "The standard of nonmedical, administrative, ministerial or routine care at a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard." *Id.* at 428. *See also Mounds Park Hospital v. Von Eye*, 245 F.2d 756, 763 (8th Cir.1957). We hold that expert testimony was not necessary to establish that Golden Villa was negligent in leaving Oliver unsupervised for fifty-five minutes and Appellees' failure to produce such testimony was not error. Since we find sufficient evidence to uphold the determination that Golden Villa breached its duty to Oliver, we overrule point of error thirty-two.

■ In point of error seven Golden Villa asserts the trial court erred in rendering judgment against it because its conduct could not constitute the proximate cause of the accident as a matter of law. Point of error eight is similar. In it Golden Villa urges the trial court erred in overruling various motions it made because there was no evidence that its conduct was the proximate cause of the accident. Points of error nine through twelve are conclusory and assert that since its conduct could not and did not constitute the proximate cause of the accident, the issues of proximate cause should not have been submitted and, alternatively, that the jury's findings of proximate cause were supported by no evidence or insufficient evidence. We disagree with each point. We find sufficient evidence for the submission of the special issues. We further find sufficient evidence to uphold the jury's findings that the breach of duty was the proximate cause, as properly de-

fined by the trial judge, of the accident with respect to Oliver and Smith. Points of error seven through twelve are overruled.

Golden Villa alleges in points of error thirteen and fourteen that the trial court erred in rendering judgment against Golden Villa because it owed no duty to Smith as a matter of law, and that its conduct could not constitute the proximate cause of Smith's injuries as a matter of law. Point of error fifteen concerns error in overruling its Motion for Directed Verdict and Motion for Judgment Non Obstante Veredicto because there was no evidence that Golden Villa breached its duty to Smith. Points of error sixteen and seventeen deal with the trial court's error in overruling its Motion to Disregard Answers to Special Issues and Motion for New Trial, and in rendering judgment against Golden Villa because there was no evidence or insufficient evidence to support the jury's findings that it breached its duty to Smith or that the breach was the proximate cause of her injuries.

Numerous cases in Texas have held that the owner or occupant of premises abutting a highway must exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel and that the owner or occupant is liable for any injury that proximately results from any breach of this duty. *See, e.g., Atchison v. Texas & P. Ry. Co.,* 143 Tex. 466, 186 S.W.2d 228 (1945). In *Atchison,* the owner of a private premises abutting on or near a highway was held liable for injury or damage resulting from an automobile collision on the highway. The collision occurred because the driver's vision was allegedly obscured by smoke which was negligently allowed to emanate from such premises. In *Skelly Oil Co. v. Johnston,* 151 S.W.2d 863 (Tex.Civ.App.— Amarillo 1941, writ ref'd), a motorist's automobile skidded on a wet spot caused by water negligently blown on to the highway from the cooling towers of the company's gasoline manufacturing plant located on land adjacent to highway. The company was held liable. In *Beaumont Iron Works Co. v. Martin,* 190 S.W.2d 491 (Tex.Civ.App.—Beaumont 1945,

writ ref'd w.o.m.), the owner of a building adjacent to a sidewalk was held to owe a duty of care to pedestrians, including maintenance of window panes to prevent their falling. More recently, the owner of a building under demolition was found liable for injuries sustained when the building collapsed onto the street and struck a motorist. The court held that the duty of the owner of a premises abutting the highway to the motoring public could not be delegated to an independent contractor and thus relieve the owner or occupant of liability. *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981).

■■■ Oliver constituted a clear and present danger to travelers who would swerve or otherwise attempt to avoid hitting her if she was on the highway. Appellant, by its failure to keep Oliver from wandering onto Highway 35, breached the duty it owed to Smith and this breach was the proximate cause of Smith's injuries. Points of error thirteen through seventeen are overruled.

■■■ In points of error eighteen through twenty-two, Golden Villa complains of the court's charge, specifically to the submission of Special Issues one, two and four. Special Issue one inquired whether Golden Villa knew or should have known of Oliver's tendency to wander. Special Issue two inquired whether Golden Villa used ordinary care in supervising Oliver. Special Issue four asked whether Golden Villa's failure, if any, to supervise Oliver was the proximate cause of Smith's accident. Points of error eighteen, nineteen and twenty-one allege the trial court erred in submitting these issues because they incorrectly stated the applicable fact issues and legal theories. Point of error twenty deals with the trial court's refusal to submit Golden Villa's requested special issues in regard to Smith. Point of error twenty-two concerns the trial court's error in overruling the objection to Special Issue one because it was not a controlling issue, was a comment on the evidence and served "as a strawman issue in an attempt to initiate

favorable jury findings by an affirmative finding of an undisputed fact." These points of error are without merit.

Each of these complaints is based on the erroneous assertion that Golden Villa breached no duty to Oliver and/or owed no duty to Oliver or Smith. We find the issues were properly submitted and the evidence was entirely sufficient to establish and sustain a cause of action by Oliver and Smith. As previously discussed, Golden Villa should have foreseen the danger which could result if Oliver were left unsupervised. Points of error eighteen through twenty-two are overruled.

■■■■ In point of error twenty-three, Golden Villa complains that the submission of Special Issues two through four and five through seven constituted a double submission of liability issues, and served as shades of the same issue. We do not agree. Special Issues two through four submit one theory of liability, that Golden Villa breached its duty to properly *supervise* Oliver, while Special Issues five through seven represent another theory of liability, that Golden Villa breached its duty to *keep or transfer* patients to another facility if it was unable to properly care for them. A party is entitled to have all ultimate fact issues submitted; *see Neuman v. Texas Employers' Insurance Association*, 377 S.W.2d 108 (Tex.Civ.App.—El Paso 1963), *rev'd on other grounds*, 379 S.W.2d 295 (Tex.1964); TEX.R.CIV.P. 277, 279. Point of error twenty-three is overruled.

■■■■ In point of error twenty-four, Golden Villa complains that the jury's affirmative findings to Special Issues two through four, and the jury's negative findings to Special Issues five through seven, are in fatal conflict. Specifically, it argues that the jury's answer in Special Issue two, that it breached its duty to *supervise* Oliver, was in fatal conflict with the jury's findings in Special Issue five, that it did not breach its duty in *keeping* Oliver. Golden Villa insists that *keeping* Oliver entails her *care and supervision.* However, instead of providing specific references to evidence introduced at trial, or citing any relevant

statutes or cases to support its argument, Golden Villa merely states, "the evidence clearly shows that the keeping of Mrs. Oliver entails her care ..." and "[T]his fact is supported by statute and by all of the evidence adduced in the case and simply cannot be refuted." This argument is unconvincing. The court of appeals is under no duty to make an independent search of the statement of facts and exhibits for evidence supporting Appellant's contention, *Saldana v. Garcia*, 155 Tex. 242, 285 S.W.2d 197 (1955), and we decline to do so here. Furthermore, points of error are required to be supported by argument and authorities and if not so supported are waived. *Ozuna v. Dyer Fruit Box Manufacturing Co.*, 606 S.W.2d 334, 337 (Tex. Civ.App.—Tyler 1980, no writ), TEX.R. CIV.P. 418(e). Golden Villa failed to comply with these requirements. Consequently, point of error twenty-four is overruled.

■■■■ Golden Villa asserts in points of error twenty-five and twenty-six, that the trial court erred in overruling its Motion for Directed Verdict, Motion for Judgment Non Obstante Veredicto, Motion to Disregard Answer to Special Issues and Motion for New Trial and in rendering judgment against it. Golden Villa contends, as a matter of law, that Oliver failed to use ordinary care in wandering, that this was the sole or proximate cause of the accident and the finding that she did use ordinary care was against the great weight and preponderance of the evidence. The court's definition of "ordinary care" took into account Oliver's advanced age and her physical and mental condition. We find this definition to be proper and correct. A review of the evidence supports the jury's findings. Points of error twenty-five and twenty-six are overruled.

■■■ In points of error twenty-seven and twenty-eight, Golden Villa complains that the trial court erred in rendering judgment against it, and in overruling its Motion for Directed Verdict, Motion for Judgment Non Obstante Veredicto, Motion to Disregard Answers to Special Issues and

Motion for New Trial, because Cecilia Evans was negligent in failing to provide her mother a 24-hour sitter or in failing to remove her mother from the nursing home prior to the accident. It alleges further that such negligence was the proximate or sole cause of the accident and that the jury's finding to the contrary was against the great weight and preponderance of the evidence. Golden Villa fails to cite any authority supporting these contentions as required by TEX.R.CIV.P. 418(e). Further, the evidence does not support this allegation. Therefore, points of error twenty-seven and twenty-eight are overruled. *See Ozuna*, 606 S.W.2d at 337.

In point of error twenty-nine, Golden Villa argues that the trial court erred in rendering judgment against it because the evidence proved as a matter of law that Smith's negligence was the sole proximate cause of the accident. Golden Villa relies on arguments and authorities cited in points of error seven through twelve. As Golden Villa has added no new arguments or authorities to support this position, point of error twenty-nine is overruled.

In points of error thirty and thirty-one, Golden Villa alternatively asserts the trial court erred in overruling its Motion to Disregard Answers to Special Issues and Motion for New Trial because there was no evidence or insufficient evidence to support the jury's finding on comparative negligence. It further argues that Oliver, Smith and Evans were negligent as a matter of law, and that the finding that Smith was only 25% negligent was against the great weight and preponderance of the evidence. We find sufficient evidence to support the jury's answers to the special issues. Therefore, points of error thirty and thirty-one also are overruled.

In point of error thirty-three, Golden Villa complains the trial court erred in admitting into evidence that part of the deposition testimony of Frances Barcelo, Golden Villa's administrator, which related to the terms "chronic brain syndrome" and "chronic schizophrenic," since she was not qualified to explain such terms. Barcelo,

owner and manager of Golden Villa, in effect testified that a patient suffering from chronic brain syndrome is mentally unbalanced. However, she qualified her answer by first stating, "Well, I really don't know, I'm not a doctor." Admission of such testimony, if error, was harmless error, since the record shows a doctor provided expert testimony using similar terminology. *See Elliott v. Elliott*, 120 S.W.2d 631, 636–637 (Tex.Civ.App.—Fort Worth, 1938, writ dism'd). Golden Villa itself established the doctor's credentials as an expert medical witness in its direct examination of him. The doctor gave basically the same testimony as Barcelo. Consequently, point of error thirty-three is overruled.

In point of error thirty-four, Golden Villa contends the trial court erred in admitting evidence of certain opinion testimony based on hypothetical questions. In *Burns v. Bridge Engineering Corp.*, 465 S.W.2d 427 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.), this court held that a trial court, in ruling on the propriety of a hypothetical question, has considerable latitude in determining whether it is based upon a fair assumption of the facts.

> It is not necessary to the propriety of such a question that it include a reference to all of the relevant facts in evidence nor that it be confined to facts proven with mathematical certainty. It may include inferences reasonably drawn from other facts proved and consistent with the theory of the party propounding the question.

*Id.* at 432. We find the trial court did not abuse its discretion in admitting the answers to these hypothetical questions. Point of error thirty-four is overruled.

In point of error thirty-five, Golden Villa argues the trial court erred in overruling its objection to the court's definition of the duty of care owed by a nursing home to its patients and in refusing the definition it offered. We disagree and find the definition of "ordinary care" given by the trial court correctly explained the duty Golden

Villa owed to Smith and Oliver. Point of error thirty-five is overruled.

In point of error thirty-six, Golden Villa asserts the trial court erred in allowing Appellees to make certain remarks in their closing arguments. However, Golden Villa did not object at time of trial and, thus, presents no error by raising this issue for the first time on appeal. *PGP Gas Products, Inc. v. Fariss,* 620 S.W.2d 559 (Tex.1981); TEX.R.CIV.P. 373. Point of error thirty-six is overruled.

The trial court's judgment is affirmed.