0592

H. C. FLINN, Appellant, v. Wiley M. CRITTENDEN, d/b/a Oakmont of Union, Respondent.

(339 S. E. (2d) 138)

Court of Appeals

*Donald B. Hocker*, Laurens and *Alexander Cruickshanks, IV*, Clinton, *for appellant*.

*James W. Hudgens* of *Ward, Barnes, Long, Hudgens & Abrams,* Spartanburg, *for respondent.*

Heard Oct. 14, 1985.

Decided Dec. 4, 1985.

LITTLEJOHN, Acting Judge:

This action for loss of consortium was commenced pursuant to § 15-75-20 Code of Laws for South Carolina (1976) by H. C. Flinn, plaintiff-appellant-husband, against Wiley M. Crittenden, d/b/a Oakmont of Union, defendant-respondent-nursing home operator.

The husband's complaint alleges that the nursing home, its agents and employees were negligent, willful and wanton in nine particulars proximately causing him damages. The gist of the allegations of wrongdoing is that the nursing home failed to constantly attend his wife while she was a patient and permitted his step-daughter, who is the patient's daughter, to remove her from the nursing home and carry her to Mississippi. She is now deceased. The answer of the nursing home is (1) a general denial, (2) assertion that the husband signed a release from liability upon the wife's admission to the home, (3) that such damages, if any, sustained by the husband were not attributable to the nursing home but to the daughter of the patient and (4) that no cause of action is asserted.

Based on affidavits, pleadings, the deposition of the husband and exhibits, the nursing home moved for a summary judgment which was granted. The husband appeals. We affirm.

The sole contention, found in the one exception of the husband, is that the trial judge erred in finding as a matter of law that no genuine issue of material facts existed and that the nursing home violated no duty owed to the husband. It is argued that there are issues which should be determined by a jury.

This couple was married in 1949. This was the second marriage for the wife. She had, by her previous marriage, five children including Katherine Gill who carried her mother to Mississippi. At the time of the incident involved,

the husband was 74 years of age and the wife was 82. Her memory was very poor, and her health was not good.

Prior to her admission to the nursing home, she had been a patient at a hospital in Clinton. During this hospitalization, she was taken from that hospital to Mississippi by this same daughter. Several weeks later, she was returned to Clinton where she remained until April 9, 1982, when she was admitted to the nursing home in Union. At the time of admission, the husband signed an agreement with the nursing home which included the following:

> The Oakmont Nursing Center provides only general duty nursing care . . . If the guest is in such condition as to need continuous or special duty nursing care, it is agreed that such must be arranged by the guest, or his legal representative or his physicians, and the Nursing Center shall in no way be responsible for failure to provide the same and is hereby released from any and all liability arising from the fact that said guest is not provided with such additional care.

During the wife's seven month stay at the nursing home, Katherine had visited her mother fairly regularly. The husband testified that he was aware of this. He also stated in his deposition that he was aware of the fact that the nursing home did not have someone in constant attention with his wife, and he did not expect such.

While the husband testified that he complained about Katherine's visits once, he admitted that he did not ask anyone to keep her from seeing her mother. Patently, she had a right to visit her mother at the nursing home; and there is no evidence that the mother was forceably removed.

The crucial issue in this case is: Did the nursing home neglect its duty? We are of the opinion that the trial judge properly disposed of this issue when he said in his order:

> A somewhat similar situation arose in the case of *Murphy v. Allstate Insurance Company*, 295 So. (2d) 29, Cert. Den. 299 So. (2d) 787 (La., 1974). In that case a 74-year-old patient at a nursing home wandered from the home and was struck and killed by an automobile. Suit was instituted against the nursing home and driver of the automobile. The plaintiff was the decedent's widow and

in her testimony she admitted that she fully understood that the facilities of the nursing home did not include an attendant or nurse to every patient. The Court in *Murphy* described the duty of a nursing home as follows:

'A nursing home is not the insurer of the safety of its patients. The nursing home does have a duty to provide a reasonable standard of care, taking into consideration the patient's mental and physical condition. This duty owed does not include having a nurse or attendant following the patient around at all times ... (Citing authority)'

In rejecting the plaintiff's demands against the nursing home the Court in *Murphy* stated, 'A nursing home is not liable for injury caused by an untoward event unless it has breached a contractual agreement to furnish special care beyond that usually furnished which relates to the injury giving rise to the cause sued on.'

Having concluded that there are no genuine material facts for determination by a jury, as did the trial judge, we hold that the summary judgment was properly granted.

The nursing home alleges that it is additionally entitled to be exonerated by reason of a release signed when the wife entered the nursing home, a part of which release has been quoted above. We do not reach this issue and have quoted from the proported release merely because it is a circumstance surrounding the relationship of the parties.

Affirmed.

SHAW, J., concurs.

GOOLSBY, J., dissents in separate opinion.

GOOLSBY, Judge (dissenting):

I respectfully dissent.

The appellant H. C. Flinn alleges in his complaint that the respondent Wiley M. Crittenden, an operator of a nursing home, received Flinn's wife as a patient and agreed to provide her care and treatment. Flinn alleges his stepdaughter later abducted his wife from the nursing home. He further alleges the abduction resulted, among other things, from

Crittenden's negligent failure to exercise proper supervision over his wife and from Crittenden's failure to take proper measures to prevent her from being abducted from the nursing home premises.

I quite agree that, under Flinn's contract with Crittenden, Oakmont was not an insurer of the safety of its patients [*Murphy v. Allstate Insurance Co.*, 295 So. (2d) 29, (La. App. 1974), *writ refused*, 299 So. (2d) 787 (La. 1974)]; however, the nursing home did have a duty to provide its patients ordinary care to protect them from any danger or injury that might reasonably be anticipated. *Bezark v. Kostner Manor, Inc.*, 29 Ill. App. (2d) 106, 172 N. E. (2d) 424 (1961); *see Golden Villa Nursing Home, Inc. v. Smith*, 674 S. W. (2d) 343 (Tex. App. 14 Dist. 1984); *see generally Annot.*, 83 A. L. R. (3d) 871 (1978). This standard of care included, I should think, at least exercising ordinary care to protect Flinn's wife from being abducted from the nursing home.

The record contains no evidence controverting Flinn's allegation that his wife was abducted by his stepdaughter from the nursing home. There is, however, evidence from which one could infer she did not go voluntarily.

When Flinn's wife was admitted to the nursing home, she suffered from senility. Flinn learned of her disappearance from someone at Oakmont. His wife apparently was taken out through a side door. An alarm system connected to the side door failed to operate. Oakmont recognized she did not leave voluntarily when it reported her disappearance to law enforcement authorities and called Flinn.

Further, Flinn and his wife, who were married over thirty years, enjoyed a close relationship and she became upset whenever Flinn left to go home after visiting her in the nursing home. Thus, she had no reason to leave Flinn, especially without telling him.

In my view, an issue of fact exists concerning whether Crittenden, through negligent nonperformance, violated his duty to provide Flinn's wife reasonable protection while she was a patient at Oakmont. Moreover, inquiry into the facts surrounding her confinement would clarify the application of the law. *See Hook v. Rothstein*, 275 S. C. 187, 268 S. E. (2d) 288 (1980). The grant of summary judgment, therefore, was inappropriate.

I would reverse.