NO. 07-10-0228-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 NOVEMBER 23, 2010



 

 



 

 

ASSISTED LIVING CONCEPTS, INC., APPELLANT

 

v.

 

TERESA STARK, AS NEXT FRIEND OF FRED GRABEAL, APPELLEE 



 

 



 

 FROM THE 47TH DISTRICT
COURT OF POTTER COUNTY;

 

NO. 98,015-A; HONORABLE RICHARD DAMBOLD, JUDGE[1]



 

 



 

Before QUINN, C.J., HANCOCK and PIRTLE,
JJ.

 

 

MEMORANDUM OPINION

            Appellant, Assisted Living Concepts,
Inc., ("ALC"), filed this interlocutory appeal from an order denying its
motion to dismiss the premises liability and breach of contract claims of
Appellee, Teresa Stark, as next friend of Fred Grabeal (Stark), for failing to
file an expert report pursuant to section 74.351 of the Texas Civil Practice
and Remedies Code.[2]  We affirm in part, and reverse and render in
part.

Background

            On October 13, 2009, Stark, Fred
Grabeal's stepdaughter, filed suit on Grabeal's behalf against "Potter
House, Assisted Living Concepts, Inc.", alleging that he was injured as a
result of negligence and breach of contract. 
Stark alleged Grabeal was diagnosed with Alzheimers disease in the
spring of 2004 and became a patient at Potter House,[3]
an assisted living community, in May 2007. 
Potter House is not a lock down facility, i.e., the residents are not
confined to their living quarters by locked doors and the doors to the outdoors
are not locked so as to prevent the residents from leaving the premises.[4]  Stark further alleged that Grabeal was injured
as a result of being allowed to wander off Potter House's premises on May 17
and 18, 2009.  Grabeal was later found by
Amarillo Police Department officers.  On
November 9, 2009, ALC filed its original answer.[5]
  

            For
her premises liability and breach of contract causes of action, Stark alleged
the following, in pertinent part:

            FRED
A. GRABEAL'S CLAIM FOR NEGLIGENCE

14.  Defendant(s) had a duty to
properly supervise Grabeal due to his known propensity to wander off since he
suffered from Alzheimer's disease and defendant(s) duty to properly maintain
locks on the premises to prevent Grabeal and others from wandering off the
premises and being unsupervised.

15.  As a proximate result of the
defendant(s) failure to properly supervise Grabeal and to properly maintain its
premises, as represented to plaintiff as being secure, Grabeal suffered
injuries and damages as a result of the defendant(s) negligence.

FRED A. GRABEAL'S CLAIM FOR BREACH OF CONTRACT

16.  Stark contracted on behalf of Grabeal for a
(sic) supervision and care in a secure location at Potter House.

            On
February 22, 2010, ALC filed a motion to dismiss alleging that Stark's claims
were health care liability claims and subject to dismissal because Stark had
failed to serve an expert report as required by section 74.351(a).  Stark responded, a hearing was held, and the
trial court issued an order dismissing Stark's "health care liability
claims" with prejudice but denying ALC's motion "as to Plaintiff's
claims for premises liability and breach of contract."  This appeal followed.

Discussion

            ALC
contends that Stark's premises liability and breach of contract claims are, in fact,
health care liability claims because the claims allege that owner and operator
of Potter House failed to properly supervise or protect Grabeal from harm.  As such, ALC contends that Stark's claims may
not be proven without expert testimony regarding Grabeal's medical condition
and the level of supervision he required, i.e., whether the owner and operator
of Potter House was under a duty to secure Grabeal's presence at the assisted
living facility.  Stark disagrees and
asserts that her claims also include the failure to secure the exterior doors and/or
properly maintain functioning door locks at Potter House.    

Standard of Review

            Appellate
courts review a trial court's order decision to either grant or deny a motion
to dismiss for failure to timely file a section 74.351(a) expert report under
an abuse of discretion standard.  See Jernigan v. Langley,
195 S.W.3d 91, 93 (Tex. 2006) (per curiam);
Jones v. King, 255 S.W.3d 156, 158
(Tex.App.--San Antonio 2008, pet. denied).  However, when the issue presented requires
statutory interpretation or a determination whether chapter 74 applies to a
claim, the issue presents a question of law which we review de novo. Fudge v. Wall, 308 S.W.3d 458, 460 (Tex.App.--Dallas 2010, no
pet.).  Whether Stark's
claims for premises liability and breach of contract are health care liability
claims is an issue presenting a question of law. See Dual D. Healthcare Operations, Inc. v.
Kenyon, 291 S.W.3d 486, 489-90 (Tex.App.--Dallas 2009, no pet.); Lee v. Boothe, 235 S.W.3d 448, 451
(Tex.App.--Dallas 2007, pet. denied). 
       

Health Care Liability Claim

            The
statute defines "health care liability claim" as:

a cause of action against a health care provider or physician for
treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant's claim or
cause of action sounds in tort or contract. 


Section 74.001(a)(13).[6]

            To
determine whether a cause of action falls under the definition of a health care
liability claim, we examine the underlying nature of the claim.  Garland
Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543 (Tex. 2004). 
"[I]t is the gravamen of the claim, not the form of the pleadings, that controls this determination."  Marks
v. St. Luke's Episcopal Hospital, 319 S.W.3d 658, 664 (Tex. 2010).  Although we are not bound by the form of the
plaintiff's pleading; Diversicare General
Partner, Inc. v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005), a review of
Stark's allegations is helpful in evaluating whether her claims against ALC are
health care liability claims recast as premises liability and breach of
contract claims.  Fudge, 308 S.W.3d at 462.  We consider the alleged wrongful conduct as
well as the duties allegedly breached.  Wilson N. Jones Mem'l Hosp.
v. Ammons, 266 S.W.3d 51, 57 (Tex.App.--Dallas 2008, pet. filed). 

            If
the factual allegations are related to medical treatment provided by the
defendant and constitute an inseparable part of the defendant's rendition of
medical services, then the plaintiff's claim is a health care liability claim
subject to the requirements of chapter 74.  Marks, 319 S.W.3d at
664; Lee, 235 S.W.3d at 451.  Whether the testimony of a medical or health
care professional is necessary may be an important factor in determining
whether a cause of action is "an inseparable part of the rendition of
medical or health care services."  Diversicare, 185
S.W.3d at 848.  Other factors
include whether a specialized standard in the health care community applies to
the alleged circumstances, and whether the negligent act involves medical
judgment related to a patient's care or treatment.  Marks,
319 S.W.3d at 676. 


            The
gravamen of Stark’s claim is that the owners and operators of Potter House
failed to supervise Grabeal and permitted him to wander off the premises.  Her complaint specifically alleges that ALC "had
a duty to properly supervise Grabeal"
and "a duty to properly maintain the locks on the premises to prevent Grabeal
. . . from wandering off the premises . . . unsupervised."  Stark further contends that she contracted
for "supervision and care in a
secure location."  Thus, the primary
focus of Stark's claim is not, as she suggests, whether the locks on Potter
House's doors were properly maintained or defective; but is, instead, whether
Grabeal was appropriately supervised and whether he should have been confined
to Potter House's premises or had his mobility restrained.  

            In
the absence of any duty to keep Grabeal's mobility restrained, ALC could not be
held liable for failing to maintain locks on its outside doors in order to keep
Grabeal inside the institution.  Where
the patient's known mental and physical condition gives no indication that he
or she is likely to wander, the health care provider has no reason or duty to
restrain him or her.  Golden Villa Nursing Home, Inc. v. Smith,
674 S.W.2d 343, 347 (Tex.App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.).

            Stark's
alleged negligence and breach of contract claims also require expert medical
testimony to determine whether Potter House breached a specialized standard of
care involving medical judgment, i.e., whether to restrain Grabeal's mobility
or not.    See Diversicare,
185 S.W.3d at 849. 
Prior to a determination whether a patient should be restrained, what
restraint is appropriate and/or what degree of restraint to apply, the health
care provider must consider a patient's physical and mental condition to
formulate a standard of care for that individual patient and abide by that
standard.  Diversicare, 185 S.W.3d at 850; Golden Villa Nursing Home, Inc., 674
S.W.2d at 347.  Such a determination is
not within the common knowledge of the general public; Diversicare, 185 S.W.3d at 850; NCED
Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 34 (Tex..App.--El Paso 2006, no
pet.), and no general rule can be articulated for this standard because it requires
that a "determination of what constitutes 'reasonable care' be made in
each individual case, taking into consideration the individual patient's known mental
and physical condition."  Golden Villa Nursing Home, Inc., 674 S.W.2d at 348.  Whether
Potter House, an open facility, breached a duty owed to Grabeal requires expert
testimony because that determination involves a medical judgment related to his
then existing mental and physical condition and the appropriateness of his
medical care and/or treatment.  

            We
conclude Stark's tort and breach of contract claims are based on an alleged
breach of a standard of care applicable to health care providers and
inseparable from the rendition of medical services because they may not be
proven without expert testimony regarding Grabeal's medical condition and the
level of supervision required.[7]
See Shaw v. BMW Healthcare, Inc., 100 S.W.3d 8, 15 (Tex.App.--Tyler
2002, pet. denied) (citing Gormley v.
Stover, 907 S.W.2d 448, 450 (Tex. 1995)). 
Appellant's sole issue is sustained. 
  

            Attorney's Fees 

            By its prayer, contained within both
its original and reply briefs, ALC requests this Court to remand this cause to
the trial court for a determination of attorney's fees to be awarded pursuant
to § 74.351(b)(1).  The body of both briefs, however, fails to
contain any discussion of this issue.  Rule
38.1(h) of the Texas Rules of Appellate Procedure requires that the body of
Appellant's brief contain a succinct, clear, and accurate statement of the arguments
made in support of any relief requested. 
Failure to advance an argument, cite authority, make record references,
or otherwise brief an issue effects a waiver of that
issue on appeal.  Sunnyside Feedyard v. Metro. Life Ins. Co., 106 S.W.3d 169, 173 (Tex.App.--Amarillo 2003, no
pet.). 

Conclusion

            Accordingly,
we affirm that portion of the trial court's order dismissing Stark's "health
care liability claims," we reverse the trial court's prior order as to
Stark's remaining claims for premises liability and breach of contract, we
render judgment dismissing all claims against ALC, with prejudice pursuant to
section 74.351(a), (b)(2), and we deny Appellant's request to remand this cause
to the trial court for a determination of attorney's fees to be awarded
pursuant to § 74.351(b)(1).  All legislatively
mandated costs of court are assessed against Appellant.    

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  











[1]Sitting by assignment. 
Tex. Gov't Code Ann. § 75.002(a)(3) (Vernon
2005).





[2]Under
Chapter 74 of the Texas Civil Practice and Remedies Code, a health care
liability claimant must serve an expert report on a defendant physician or
health care provider within 120 days after the date the original petition was
filed.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a) (Vernon Supp. 2010).  If such a report is not served, a defendant
physician or health care provider may file a motion to dismiss the claim with
prejudice to its refiling.  Id. § 74.351(b)(2).  If the trial court's order on the motion to dismiss
"denies all or part of the relief sought by the motion," the movant
may file an interlocutory appeal of the trial court's order.  Id. § 51.014(a)(9).  For
convenience, future citations to the provisions of the Texas Civil Practice and
Remedies Code throughout the remainder of this opinion will be simply as
"section ____" or "§ ____." 






[3]As
used herein, "Potter House" refers to the physical facility where
Grabeal resided on May 17, 2009.





[4]Affidavit
of Tina Burnworth, Regional Director of Quality and Care Management for Potter
House, attached to Defendant's Reply To
Plaintiff's Response To And Brief In Opposition To Defendant's Motion To
Dismiss For Failure To Serve Expert Report.





[5]In
part, ALC's original answer contained a verified denial contending that ALC was
not liable in the capacity sued. 
Although ALC's answer does not aver who or what entity owns and operates
Potter House, later pleadings indicate that Texas ALC Partners II, L.P. both
owns and does business as Potter House.  See Brief for Appellant Texas
ALC Partners II, L.P. D/B/A Potter House, Cause No. 07-10-0360-CV.  





[6]"Health care" is defined as "any act or
treatment performed or furnished, or that should have been performed or
furnished, by any health care provider for, to, or on behalf of a patient
during the patient's medical care, treatment, or confinement."  Section 74.001(a)(10).  

 





[7]Regarding the use of restraints and supervision in
nursing homes, the Supreme Court in Diversicare
stated as follows: 

[s]ome patients require enhanced supervision and
additional staff or physical restraints to protect them from injuring
themselves and others . . ., while other patients do not require such
protections.  The nature and intensity of
care and treatment, including professional supervision, monitoring, assessment,
quantities and types of medication, and other medical treatment are judgments
made by professionals trained and experienced in treating and caring for
patients and the patient populations in their health care facilities. 

Diversicare, 185 S.W.3d 849.