NO. 07-10-0228-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 23, 2010

_____

ASSISTED LIVING CONCEPTS, INC., APPELLANT

v.

TERESA STARK, AS NEXT FRIEND OF FRED GRABEAL,
APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 98,015-A; HONORABLE RICHARD DAMBOLD, JUDGE[1]

_____

Before QUINN, C.J., HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Assisted Living Concepts, Inc., ("ALC"), filed this interlocutory appeal

from an order denying its motion to dismiss the premises liability and breach of contract

claims of Appellee, Teresa Stark, as next friend of Fred Grabeal (Stark), for failing to file

_____

[1]Sitting by assignment.  Tex. Gov't Code Ann. § 75.002(a)(3) (Vernon 2005).

an expert report pursuant to section 74.351 of the Texas Civil Practice and Remedies Code.[2]  We affirm in part, and reverse and render in part.

## Background

On October 13, 2009, Stark, Fred Grabeal's stepdaughter, filed suit on Grabeal's behalf against "Potter House, Assisted Living Concepts, Inc.", alleging that he was injured as a result of negligence and breach of contract.  Stark alleged Grabeal was diagnosed with Alzheimers disease in the spring of 2004 and became a patient at Potter House,[3] an assisted living community, in May 2007.  Potter House is not a lock down facility, i.e., the residents are not confined to their living quarters by locked doors and the doors to the outdoors are not locked so as to prevent the residents from leaving the premises.[4]  Stark further alleged that Grabeal was injured as a result of being allowed to wander off Potter House's premises on May 17 and 18, 2009.  Grabeal was later found

---

[2]Under Chapter 74 of the Texas Civil Practice and Remedies Code, a health care liability claimant must serve an expert report on a defendant physician or health care provider within 120 days after the date the original petition was filed.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2010).  If such a report is not served, a defendant physician or health care provider may file a motion to dismiss the claim with prejudice to its refiling.  *Id.* § 74.351(b)(2).  If the trial court's order on the motion to dismiss "denies all or part of the relief sought by the motion," the movant may file an interlocutory appeal of the trial court's order*.  Id.* § 51.014(a)(9).  For convenience, future citations to the provisions of the Texas Civil Practice and Remedies Code throughout the remainder of this opinion will be simply as "section ____" or "§ ____."

[3]As used herein, "Potter House" refers to the physical facility where Grabeal resided on May 17, 2009.

[4]Affidavit of Tina Burnworth, Regional Director of Quality and Care Management for Potter House, attached to *Defendant's Reply To Plaintiff's Response To And Brief In Opposition To Defendant's Motion To Dismiss For Failure To Serve Expert Report.*

by Amarillo Police Department officers. On November 9, 2009, ALC filed its original answer.[5]

For her premises liability and breach of contract causes of action, Stark alleged the following, in pertinent part:

FRED A. GRABEAL'S CLAIM FOR NEGLIGENCE

14. Defendant(s) had a duty to properly supervise Grabeal due to his known propensity to wander off since he suffered from Alzheimer's disease and defendant(s) duty to properly maintain locks on the premises to prevent Grabeal and others from wandering off the premises and being unsupervised.

15. As a proximate result of the defendant(s) failure to properly supervise Grabeal and to properly maintain its premises, as represented to plaintiff as being secure, Grabeal suffered injuries and damages as a result of the defendant(s) negligence.

FRED A. GRABEAL'S CLAIM FOR BREACH OF CONTRACT

16. Stark contracted on behalf of Grabeal for a (sic) supervision and care in a secure location at Potter House.

On February 22, 2010, ALC filed a motion to dismiss alleging that Stark's claims were health care liability claims and subject to dismissal because Stark had failed to serve an expert report as required by section 74.351(a). Stark responded, a hearing was held, and the trial court issued an order dismissing Stark's "health care liability

---

[5]In part, ALC's original answer contained a verified denial contending that ALC was not liable in the capacity sued. Although ALC's answer does not aver who or what entity owns and operates Potter House, later pleadings indicate that Texas ALC Partners II, L.P. both owns and does business as Potter House. *See Brief for Appellant Texas ALC Partners II, L.P. D/B/A Potter House,* Cause No. 07-10-0360-CV.

claims" with prejudice but denying ALC's motion "as to Plaintiff's claims for premises liability and breach of contract."  This appeal followed.

## Discussion

ALC contends that Stark's premises liability and breach of contract claims are, in fact, health care liability claims because the claims allege that owner and operator of Potter House failed to properly supervise or protect Grabeal from harm.  As such, ALC contends that Stark's claims may not be proven without expert testimony regarding Grabeal's medical condition and the level of supervision he required, i.e., whether the owner and operator of Potter House was under a duty to secure Grabeal's presence at the assisted living facility.  Stark disagrees and asserts that her claims also include the failure to secure the exterior doors and/or properly maintain functioning door locks at Potter House.

## Standard of Review

Appellate courts review a trial court's order decision to either grant or deny a motion to dismiss for failure to timely file a section 74.351(a) expert report under an abuse of discretion standard.  *See Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006) (*per curiam*); *Jones v. King,* 255 S.W.3d 156, 158 (Tex.App.--San Antonio 2008, pet. denied).  However, when the issue presented requires statutory interpretation or a determination whether chapter 74 applies to a claim, the issue presents a question of law which we review *de novo. Fudge v. Wall*, 308 S.W.3d 458, 460 (Tex.App.--Dallas 2010, no pet.).  Whether Stark's claims for premises liability and breach of contract are health care liability claims is an issue presenting a question of law. *See Dual D.*

4

*Healthcare Operations, Inc. v. Kenyon*, 291 S.W.3d 486, 489-90 (Tex.App.--Dallas 2009, no pet.); *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex.App.--Dallas 2007, pet. denied).

## Health Care Liability Claim

The statute defines "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Section 74.001(a)(13).[6]

To determine whether a cause of action falls under the definition of a health care liability claim, we examine the underlying nature of the claim. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). "[I]t is the gravamen of the claim, not the form of the pleadings, that controls this determination." *Marks v. St. Luke's Episcopal Hospital*, 319 S.W.3d 658, 664 (Tex. 2010). Although we are not bound by the form of the plaintiff's pleading; *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005), a review of Stark's allegations is helpful in evaluating whether her claims against ALC are health care liability claims recast as premises liability and breach of contract claims. *Fudge*, 308 S.W.3d at 462. We consider the alleged wrongful conduct

---

[6] "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Section 74.001(a)(10).

5

as well as the duties allegedly breached. *Wilson N. Jones Mem'l Hosp. v. Ammons*, 266 S.W.3d 51, 57 (Tex.App.--Dallas 2008, pet. filed).

If the factual allegations are related to medical treatment provided by the defendant and constitute an inseparable part of the defendant's rendition of medical services, then the plaintiff's claim is a health care liability claim subject to the requirements of chapter 74. *Marks,* 319 S.W.3d at 664; *Lee,* 235 S.W.3d at 451. Whether the testimony of a medical or health care professional is necessary may be an important factor in determining whether a cause of action is "an inseparable part of the rendition of medical or health care services." *Diversicare*, 185 S.W.3d at 848. Other factors include whether a specialized standard in the health care community applies to the alleged circumstances, and whether the negligent act involves medical judgment related to a patient's care or treatment. *Marks*, 319 S.W.3d at 676.

The gravamen of Stark's claim is that the owners and operators of Potter House failed to supervise Grabeal and permitted him to wander off the premises. Her complaint specifically alleges that ALC "had a duty to properly *supervise* Grabeal" and "a duty to properly maintain the locks on the premises to prevent Grabeal . . . from wandering off the premises . . . *unsupervised*." Stark further contends that she contracted for "*supervision* and care in a secure location." Thus, the primary focus of Stark's claim is not, as she suggests, whether the locks on Potter House's doors were properly maintained or defective; but is, instead, whether Grabeal was appropriately supervised and whether he should have been confined to Potter House's premises or had his mobility restrained.

6

In the absence of any duty to keep Grabeal's mobility restrained, ALC could not be held liable for failing to maintain locks on its outside doors in order to keep Grabeal inside the institution. Where the patient's known mental and physical condition gives no indication that he or she is likely to wander, the health care provider has no reason or duty to restrain him or her. *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343, 347 (Tex.App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Stark's alleged negligence and breach of contract claims also require expert medical testimony to determine whether Potter House breached a specialized standard of care involving medical judgment, i.e., whether to restrain Grabeal's mobility or not. See *Diversicare*, 185 S.W.3d at 849. Prior to a determination whether a patient should be restrained, what restraint is appropriate and/or what degree of restraint to apply, the health care provider must consider a patient's physical and mental condition to formulate a standard of care for that individual patient and abide by that standard. *Diversicare*, 185 S.W.3d at 850; *Golden Villa Nursing Home, Inc.*, 674 S.W.2d at 347. Such a determination is not within the common knowledge of the general public; *Diversicare,* 185 S.W.3d at 850; *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34 (Tex..App.--El Paso 2006, no pet.), and no general rule can be articulated for this standard because it requires that a "determination of what constitutes 'reasonable care' be made in each individual case, taking into consideration the individual patient's known mental and physical condition." *Golden Villa Nursing Home, Inc.*, 674 S.W.2d at 348. Whether Potter House, an open facility, breached a duty owed to Grabeal requires expert testimony because that determination involves a medical judgment related to his

then existing mental and physical condition and the appropriateness of his medical care and/or treatment.

We conclude Stark's tort and breach of contract claims are based on an alleged breach of a standard of care applicable to health care providers and inseparable from the rendition of medical services because they may not be proven without expert testimony regarding Grabeal's medical condition and the level of supervision required.[7] *See Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 15 (Tex.App.--Tyler 2002, pet. denied) (citing *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995)). Appellant's sole issue is sustained.

### Attorney's Fees

By its prayer, contained within both its original and reply briefs, ALC requests this Court to remand this cause to the trial court for a determination of attorney's fees to be awarded pursuant to § 74.351(b)(1). The body of both briefs, however, fails to contain any discussion of this issue. Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that the body of Appellant's brief contain a succinct, clear, and accurate statement of the arguments made in support of any relief requested. Failure to advance

---

[7]Regarding the use of restraints and supervision in nursing homes, the Supreme Court in *Diversicare* stated as follows:

> [s]ome patients require enhanced supervision and additional staff or physical restraints to protect them from injuring themselves and others . . ., while other patients do not require such protections. The nature and intensity of care and treatment, including professional supervision, monitoring, assessment, quantities and types of medication, and other medical treatment are judgments made by professionals trained and experienced in treating and caring for patients and the patient populations in their health care facilities.

*Diversicare*, 185 S.W.3d 849.

an argument, cite authority, make record references, or otherwise brief an issue effects a waiver of that issue on appeal. *Sunnyside Feedyard v. Metro. Life Ins. Co.,* 106 S.W.3d 169, 173 (Tex.App.--Amarillo 2003, no pet.).

## Conclusion

Accordingly, we affirm that portion of the trial court's order dismissing Stark's "health care liability claims," we reverse the trial court's prior order as to Stark's remaining claims for premises liability and breach of contract, we render judgment dismissing all claims against ALC, with prejudice pursuant to section 74.351(a), (b)(2), and we deny Appellant's request to remand this cause to the trial court for a determination of attorney's fees to be awarded pursuant to § 74.351(b)(1). All legislatively mandated costs of court are assessed against Appellant.

Patrick A. Pirtle
Justice

9