**AIR CONTROL ENGINEERING, INC.,**
Appellant,

v.

**Dennis C. HOGAN, Appellee.**

No. 17820.

Court of Civil Appeals of Texas, Dallas.

Feb. 17, 1972.

Rehearing Denied March 16, 1972.

L. W. Anderson, Jr., Dallas, for appellant.

K. Mark Pistorius, Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Hogan's action against Air Control Engineering, Inc. was to recover damages resulting from an explosion of an air conditioning unit owned by Hogan and which had been serviced and repaired by Air Control. Hogan alleged, *inter alia*, that Air Control was negligent in failing to reset the limit switch on the unit to a setting low enough to shut down the compressor if excessive pressure began to build up in the air conditioning system and that such negligence was a proximate cause of the explosion and resulting damages.

The case was tried before the court and a jury and submitted on four special issues. In special issue No. 1 the court asked the jury:

"Do you find from a preponderance of the evidence that on the occasion in question Air Control Engineering, Inc. failed to reset the limit switch to a setting low enough to shut down the compressor prior to rupturing pressure within the air conditioning system?"

In response the jury answered "We do." In special issues 2 and 3 the court inquired as to whether or not such failure, if they had found same in response to special issue No. 1, was negligence and a proximate cause of the occurrence in question. The jury gave affirmative answers to each of these questions. In response to special issue No. 4 the jury found the damages to be $786.50. Based upon this verdict the trial court rendered judgment for Hogan against Air Control for the amount found by the jury.

In its first point on appeal appellant Air Control contends that the trial court erred in failing to sustain its objection to the submission of special Issue No. 1 on the ground that same assumed a disputed issue of fact, namely that the high limit switch in question was capable of being reset in the field, when all of the evidence was to the contrary on said fact issue. Resolution of the question presented, as well as other points hereinafter discussed, requires a brief summary of the material testimony.

Appellee Hogan testified that because of malfunction of the air conditioning unit in his home he contacted Air Control Engineering and asked them to send a representative to his home to do whatever was necessary to restore the unit to proper operation. Donald Ray Elrod, an employee of Air Control, inspected the unit and recommended the replacement of a compressor. The compressor was installed one day and Elrod returned early the next day to check out the unit operation. Shortly after he left the residence the air conditioning unit exploded.

Mr. Stanley Prescott, a design consultant, who operated his own consulting firm, testified as an expert witness on behalf of appellee. Prescott's qualifications as an expert in mechanical and electronic instruments was not questioned by appellant. He testified that he was familiar with the functioning of air conditioners such as the

one involved in this case. He inspected the unit at the Hogan residence the day following the explosion and testified in detail to extensive damage in and about the unit. He then described the mechanism of the unit which involved primarily the compression of gas; the cooling of gas and the fan which blows the cool air into the home. The function of the compressor is to take the gas in relative low pressure and compress it to high pressure and remove the heat. When asked what would happen if the pressure is too high he responded:

"A. Well, if the pressure is too high beyond the designed limits of the system, then, of course, it will blow up."

When asked if there was a device on Mr. Hogan's air conditioning unit which would shut down the unit if the pressure should become too high he responded that there was such a device which was known as a pressure limit switch. When operating properly the pressure limit switch becomes activated when the pressure builds up beyond the set point and causes the air compressor to stop. He testified that the pressure limit switch was adjustable; that the switch itself is a little piece one inch square; that one bolt that holds it up which has a slot in it so that the switch can be moved up and down so that the switch can be adjusted. He said the resetting of the switch in a field situation was practical and easy.

"Q. How do you go about adjusting a switch?

A. You loosen the 2 screws that mount the switch and slide 1 in, far back which positions the point at which the pressure element will activate the switch.

Q. Are any special tools required?

A. A screwdriver; a pair of ordinary pliers to tighten it up."

Prescott stated that the tests which he made on the compressor unit and on the pressure switch after the explosion indicated that the switch on the air conditioner would activate only after the pressure in the system had increased to a point beyond the test pressure indicated for the unit by the manufacturer. In this connection he said that the high pressure at which the switch would cut off was 575 pounds per square inch and that the lower limit was 515 pounds psi. When asked to state his opinion as to the cause of the explosion he said that it was caused by pressure building up too high on the high pressure side of the air conditioner and that the pressure limit switch was operating at a point above the test pressure indicated for the unit which was 460 psi.

On cross-examination he was asked if he was familiar with how air conditioning people tested the high pressure switches in the field and he replied that he did not know how they would test the switch but he knew how it should be done. He said his examination of the switch indicated the switch had not been reset prior to the explosion.

Elrod, appellant's witness, testified that after installing the compressor he tested the unit and found it to be all right. He said he did not reset the pressure limit switch because the company recommended that the same not be changed. He said if there was anything wrong with the pressure limit switch they were instructed to install a new one rather than reset it in the field. He did not know what caused the explosion.

Appellant's witnesses Weaver and Radford, both experts in the air conditioning business, said that the pressure switch had not been adjusted; that it could have been adjusted by the use of a special ring but that repairmen never attempt to adjust the switches after they have been set by the factory. They testified that they follow the factory recommendation rather than attempt to reset the switch on the unit itself in the field. This recommendation was to install a new switch and not adjust the old one.

Both Elrod and Radford testified that the correct pressure maximum setting on the high pressure switch would be 415 to 420 psi and that the switch should be set below those figures.

From a review of this testimony it is quite evident that special issue No. 1 did not present a controverted issue of fact to the jury. None of appellant's witnesses denied the fact that the pressure limit switch was not reset prior to the explosion. They all conceded that it was not reset but attempted to excuse the failure to do so by pointing to the recommendation of the manufacturer that the same not be reset in the field but that if necessary a new switch be installed.

In this state of the evidence appellant's objection to the submission of special issue No. 1 obviously is without merit and must be overruled. Even if the evidence was conflicting we could not sustain appellant's contention for the reason that the issue, as framed by the court, does not assume a fact in dispute but merely submits the question to the jury for answer. Nor can we agree with appellant's contention that there was no evidence that the pressure switch could not be reset in the field and that the issue itself assumed such fact. As above related, appellee's expert witness Prescott testified that the switch could easily be reset by a mechanic using a screwdriver and pliers.

In its second point of error appellant contends that the trial court erred in failing to sustain its objection to special issue No. 1 for the reason that it submitted two controverted ultimate issues of fact in one question. We overrule this point for two reasons. First, the issue is not subject to the complaint and secondly no objection was made by appellant to the submission of special issue No. 1 for the reason stated and therefore the point is waived. Rule 274, Vernon's Texas Rules of Civil Procedure.

By its points 3, 4, 5, 6, 7 and 8 appellant attacks the answer of the jury to special issues 1, 2 and 3 because there is no evidence, or insufficient evidence, to support their answers. We have carefully examined these "no evidence" and "insufficient evidence" points in the light of the rule relating to judicial review of such points and having done so we overrule them.

Appellant argues that the record does not contain sufficient evidence to demonstrate the existence of a duty on its part which has been breached resulting in damages to appellee. It further argues that the evidence is lacking in probative force to establish foreseeability and cause in fact, or causal relation. Frontier Theatres Inc. v. Brown, 362 S.W.2d 360 (Tex.Civ. App., El Paso 1962, reversed on other grounds, 369 S.W.2d 299 (1963) ); Texas & P. Ry. v. McCleery, 418 S.W.2d 494 (Tex.Sup.1967).

Appellant earnestly contends that while it is undisputed in the evidence that the pressure switch was not reset by its employee prior to the explosion yet such does not constitute a breach of duty which could proximately result in the damage to appellee because all of its expert witnesses testified that the manufacturer of the unit did not recommend that the pressure switch be reset in the field. We cannot agree with appellant. The question presented in this case is one of negligence and proximate cause. The court correctly defined the term "negligence" as failure to use ordinary care which is failure to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. Thus the question becomes one of ordinary care and not one which dictates the unwavering obedience to some manufacturer's recommendations concerning the unit. Appellee's expert witness Prescott testified that he was not concerned with the manu-

facturer's recommendation but knew that the pressure switch could be easily reset in the field. He testified that the switch was not reset below the danger limit of pressure poundage prescribed by the manufacturer and that it was his opinion that the explosion was caused by the build-up of excessive pressure within the unit.

■ The fact that a person conducts himself in a particular manner which is usual and customary does not foreclose the question of ordinary care under the particular circumstances. It is entirely possible that customary practices might of themselves be unreasonable or include negligence. Thus in the early case of G., C. & Santa Fe Ry. v. Evansich, 61 Tex. 3 (1884), the railroad sought to avoid liability by evidence of a customary practice. The Supreme Court denied this contention saying:

"Negligence is a fact to be determined in a case by the evidence and that other railways may not usually have kept locked or guarded their turntables, and that such habitual practice may have been, as to them, reasonable, and the exercise of due care, would not tend to prove that such failure on the part of appellant was the exercise of due care."

In Great Atlantic & Pacific Tea Co. v. Garner, 170 S.W.2d 502 (Tex.Civ.App., Dallas 1943), Justice Young stated:

"Evidence of custom is, of course, admissible as tending to prove what an ordinarily prudent man would do; but such evidence is not essential to a finding on the issue, nor conclusive thereof when so introduced. [Citing authorities]; for a custom itself may fail to conform to the minimum requirements of ordinary care; 45 C.J., Negligence, § 87, pp. 706, 708."

Again, Justice Pope, in Kuemmel v. Vrandenburg, 239 S.W.2d 869 (Tex.Civ. App., San Antonio 1951), said:

"Conformity with the uniform custom of persons engaged in a like business may be considered as evidence of proper care, but this does not preclude a showing that the custom itself is a negligent custom [Citing authorities]. That is not the case before us. * * * Just as conformity with custom may evidence freedom from negligence, nonconformity may evidence the presence of negligence. [Citing authorities]"

We are of the opinion, and so hold, that the record contains ample evidence of probative force that it was negligence on the part of appellant's employee to fail to reset the pressure switch prior to the explosion and that such failure was 'a proximate cause of the damage and loss to appellee.

■ Appellant's ninth point is without merit and is overruled. Appellant sought to attack the judgment upon the verdict because "there was ample proof that there were two other safety switches which would have had to malfunction to cause the accident in question." In the first place the testimony of appellant's witnesses concerning other safety devices in the unit was very vague and sketchy and came from witnesses who had no actual knowledge as to whether such devices were connected or operating at the time the explosion occurred. The jury had all of the evidence before it and is presumed to have considered same in arriving at its answers to the issues. Moreover, such defensive matters were not pleaded nor were defensive issues tendered to the trial court for submission to the jury.

Finding no reversible error reflected in this record the judgment of the trial court is affirmed.