

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00084-CR

———————————————

MARK MORGAN UPCHURCH, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CR20-0035

Before Birdwell, Wallach, and Walker, JJ.
Opinion by Justice Birdwell

## OPINION

Appellant Mark Morgan Upchurch appeals his conviction for assault of a family member with a previous conviction and sentence of twenty years in prison and a $10,000 fine. We affirm.

## I. Background

### A. The Aggravated Assault (by Fire)

Appellant met and began dating the complainant, Jane,[1] in 2013. In 2014, Jane was hospitalized after being set on fire. She told paramedics that her neighbor poured gasoline on her and set her on fire, but at the emergency room, she reported that "Mark Churchill [sic] did this to me." Appellant subsequently pleaded guilty to aggravated assault causing serious bodily injury.

### B. The 2018 Assault

Appellant thereafter resumed his relationship with Jane, and they married in 2018. Later that year, Appellant drove to the police department after an altercation with Jane. He ultimately pleaded guilty in 2019 to assault–family violence for striking Jane's throat with his hand in that altercation.

### C. The Charged Offense

On October 6, 2019, while residing in a home with Appellant's grandmother, a fight between Jane and Appellant escalated to Appellant hitting Jane in the head with his hand. Appellant reported himself to the local police, and Springtown Police

---

[1]We use a pseudonym to protect the complainant's privacy.

Officer Kathryn Wacasey questioned him, detained him, and then drove to the house and interviewed and photographed Jane. Officer Wacasey released Appellant that day because Jane equivocated on whether or not she wanted to press charges. However, Appellant was later indicted and tried for assault–family violence with a previous conviction.

At his trial—outside the presence of the jury—Appellant objected to the evidence of his prior offenses. He argued that "the prejudicial effect" of this evidence "would far outweigh any relevance." The State contended that it was allowed to "get into extraneous acts that show the nature of the relationship between the victim and" Appellant and that "the victim's credibility is going to be a huge issue in this case." The trial court allowed the State to introduce this evidence, and Jane testified to the jury that on June 1, 2014, she was sitting in Appellant's car, which was parked behind his house, and he came out and started pouring gasoline all over the car and her. He then walked away, came back with a propane torch, lit Jane and the car on fire, and shut the car door with Jane inside. Jane further testified that she climbed out of the car through a window and started rolling around, and Appellant "was just standing there looking at" her. She yelled for help, and he got a hose and doused her with water. She managed to walk into the house and make it to the bathroom. She recalled feeling her skin falling off her legs and feeling the fire up in her chest, even after it had been extinguished. She tried to don a sundress, but it melted right off of her legs. She testified that Appellant never called 911 or offered to take her to a hospital; her

3

neighbor took her instead. Photographs of Jane in the hospital were admitted in evidence, along with thousands of pages of her medical records. She also testified about other times that Appellant had assaulted her, including the charged offense.

The only other witness at the trial on the merits was Officer Wacasey. A video of her interaction with Appellant on the date of the charged offense was admitted in evidence and played for the jury. Appellant had admitted to Officer Wacasey that he had hit his wife but also said that she had been "provoking" and "threatening" him. After one hour of deliberations, the jury convicted Appellant. Appellant testified in his own defense as the only witness at the trial on punishment. The trial court sentenced him to twenty years in prison and a $10,000 fine, the maximum punishment for this offense. *See* Tex. Penal Code Ann. §§ 12.33, .42(a). Appellant now brings this appeal.

## II. Discussion

In two issues, Appellant argues that the trial court erred when it admitted extraneous-offense evidence in the trial on the merits related to a non-jurisdictional enhancement alleged in the indictment and that this erroneous admission of evidence affected Appellant's substantial rights.[2] We will analyze Appellant's arguments as one issue.

---

[2]As stated previously, Appellant also objected at trial to the admission of his conviction for the 2018 assault. However, on appeal, Appellant does not complain about the admission of that evidence.

## A. Standard of Review

If the trial court's evidentiary ruling is correct under any applicable theory of law, then it will not be disturbed. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). In reviewing a trial court's determination of the admissibility of extraneous-offense evidence, we recognize the trial court's superior position to gauge the impact of the evidence and, accordingly, we will reverse "rarely and only after a clear abuse of discretion." *Lumsden v. State*, 564 S.W.3d 858, 877 (Tex. App.—Fort Worth 2018, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). "A trial court judge is given considerable latitude with regard to evidentiary rulings." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

## B. Preservation of Error

The State argues as an initial matter that Appellant has failed to preserve his complaint for our review. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595

S.W.3d 216, 223 (Tex. Crim. App. 2020).

Before opening statements and outside the jury's presence, the State proffered the extraneous-offense evidence to the trial court, and Appellant stated his objections. The trial court said that it was "going to grant the State's request," effectively ruling all the proffered evidence admissible. Thus, Appellant did not need to renew his objection to preserve his claim of error for appeal. Tex. R. Evid. 103(b). However, when certain exhibits—namely, Jane's medical records and photographs of the gas can, torch, and car involved in the aggravated assault by fire—were offered into evidence, Appellant stated, "No objection." When the State offered other exhibits—namely, photographs of Jane in the hospital—into evidence, Appellant timely and specifically objected "that the prejudicial [sic] outweighs the relevance of these exhibits." The trial court admitted all the offered exhibits into evidence.

Whether a later statement of "no objection" to the introduction of evidence that was subject to an earlier objection forfeits the error flowing from the introduction of that evidence is "context-dependent." *Thomas v. State*, 408 S.W.3d 877, 885–86 (Tex. Crim. App. 2013). The Court of Criminal Appeals has held:

> If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits. On the other hand, if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the "no objection" statement to be a waiver of the earlier-preserved error. Under the latter circumstances, the

affirmative "no objection" statement will, by itself, serve as an unequivocal indication that a waiver was both intended and understood.

*Id.* Applying this test to the instant case, we simply cannot tell from the record as a whole whether Appellant intended or the trial court understood his "[n]o objection" statements to constitute an abandonment of his earlier objection. At the hearing outside the presence of the jury, Appellant's counsel certainly sounded like he had no intention of waiving this claim of error:

> [Regarding evidence of the aggravated assault by fire], I would ask most strenuously -- pardon me. I would strenuously object to that coming in.
>
> Plus, the fact that as soon as they hear he set her on fire, poured gas, set her on fire, then the trial is over. They're not going to hear another word of testimony regarding the case in chief that we're here on. All they're going to hear is: He set her on fire.
>
> And I believe that under the rules that the -- the relevance of that -- the prejudicial value is -- is not nearly worth its relevance in this case.
>
> . . . .
>
> So, I don't believe that -- that bringing in the priors would be relevant. And, certainly, the prejudicial effect would be -- would far outweigh any relevance. So, on those grounds, I would object to bring[ing] it in.

But the trial court sounded like it expected Appellant's counsel to object again later—when the evidence was offered in front of the jury—and counsel signaled his assent:

> THE COURT: Well, let me ask: As far as the photos, I mean, I think those would be a "time of." You know, whenever those get offered, they get offered; and Defense Counsel can object to those; and the Court would make a ruling at that time.

7

. . . .

THE COURT: The Court[] is going to grant the State's request; and, [Defense Counsel], if you -- you know, obviously, if you need to make whatever objection you need to make when that testimony is going on, I --

[DEFENSE COUNSEL]: At the time, I'm going to make the -- I'll renew the objection and, then, you know, get it on the record for appellate purposes.

THE COURT: And in the event that, you know, I -- from what y'all are telling me this may be an every-question objection; and, so, if that be the case, just to save you having to stand up and continuing to interrupt in front of the jury --

[DEFENSE COUNSEL]: I'll ask for a running objection.

THE COURT: And the Court would be inclined to grant that.

Further muddying the waters of this record is counsel's objection to the photographs of Jane in the hospital for her burns, when he did not object to her medical records. This, too, is ambiguous; we could see it as an indication that Appellant's counsel did not intend to waive his objection to the other exhibits (especially the medical records, as it would be illogical to object to photographs of the hospitalized Jane but not to medical records that describe what the photographs depict), but we could also glean from this course of action that counsel saw the need to renew his objection to the photographs when the State offered them, indicating that—by his unqualified statements of "[n]o objection" to the other exhibits—he did intend to abandon his earlier objection, at least as to that evidence. Under these circumstances, counsel's affirmative "no objection" statements served per se as "an

unequivocal indication that a waiver was both intended and understood." *Thomas*, 408 S.W.3d at 885–86. However, we think that Appellant sufficiently preserved his objection to Jane's testimony and the photographs of her in Parkland Hospital.

## C. Analysis

A trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. In analyzing a Rule 403 objection,[3] the trial court must engage in a balancing process. *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd). In conducting a Rule 403 balancing test, a court must consider (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence and balance those factors against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence

---

[3]It is apparent from the context of the record that this was the ground for Appellant's objection. *See* Tex. R. Evid. 103(a)(1)(B), 403; Tex. R. App. P. 33.1(a)(1)(A); *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd) (appellant preserved his objection under prejudice prong of Rule 403 where he objected to evidence as "highly prejudicial" and "wholly for purposes of poisoning the minds of the jury with extraneous allegations"); *Alsheikh v. Altawil*, No. 02-12-00178-CV, 2015 WL 392220, at *6 (mem. op.) (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (appellant preserved his Rule 403 complaint by objecting that exhibit's relevance was outweighed by its prejudicial effect).

will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.). The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). It was Appellant's burden to overcome this presumption by demonstrating that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice or other factors. *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd). We hold that he met that burden here.

In looking at the first factor—the inherent probative force of the evidence—we must consider how compellingly evidence of the extraneous offense serves to make more or less probable a fact of consequence. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). Arguing that whether or not he burned Jane was not a "fact of consequence to the litigation," *see Gigliobianco*, 210 S.W.3d at 641, Appellant focuses on the fact that the State used his conviction for the aggravated assault by fire as a *punishment* enhancement and not a *jurisdictional* enhancement in this case. Because the extraneous aggravated assault conviction was not an essential element of the underlying charged offense, Appellant contends, evidence that he burned Jane "had absolutely no probative value in this case." The State counters that this evidence had probative value:

- as to Appellant's intent to commit the charged offense;

10

- to contextualize the nature of Appellant's abusive relationship with Jane, showing the patterns of abuse and the power and control that he had over her, to help the jury understand why she never reported his conduct to the police, why she stayed with him and returned to him after each incident, and why she neither called the police nor pressed charges for the assault for which Appellant was on trial;

- to rebut the defensive theory of fabrication; and

- to rebut Appellant's contention that the victim was the initial aggressor and he was just defending himself.

We are skeptical of the State's argument that the aggravated assault by fire had probative value as rebuttal evidence; the State introduced this evidence in its case-in-chief and had told the trial court up front, before *any* evidence was presented, that it was going to "get into" this and other extraneous acts. However, we agree that the evidence of Appellant setting Jane on fire had some probative force on the issues of the nature of their relationship and Appellant's intent to commit the assault in this case. Thus, the first factor weighs in favor of the State.

Most of the other factors, though, weigh against the State and in Appellant's favor. As to the second factor, the State had little if any need for this evidence. In evaluating this factor, we consider (1) whether the proponent has other available evidence to establish the fact of consequence that the evidence is relevant to show,

(2) the strength of the other evidence, and (3) whether the fact of consequence is related to an issue that is in dispute. *Erazo v. State*, 144 S.W.3d 487, 495–96 (Tex. Crim. App. 2004). Here, the State properly pled Appellant's aggravated assault conviction as a punishment enhancement and had no need to prove it up at the trial on the merits. To the extent the aggravated assault by fire provided probative information consistent with the admissible purposes for which it was offered, the State could have simply introduced a certified copy of Appellant's conviction and the indictment from that case. Such would have apprised the jury of the extraneous offense without revealing the horrific details of a crime that was disproportionately more heinous than the offense Appellant committed in this case.

The State likens this case to *James v. State* and quotes from our opinion in *James* where we stated, "The State also had a strong need for the extraneous-offense evidence because no one [other than the appellant and the complainant] witnessed the charged offense[]," and the complainant's "credibility was at issue." 623 S.W.3d 533, 548 (Tex. App.—Fort Worth 2021, no pet.). But the State omits a critical fact from the quoted sentence—the complainant in *James* "had no evident injuries." *Id.* Jane not only had evident injuries, but photographs of her injuries—and the supporting testimony from Jane and Officer Wacasey—were admitted in evidence without objection. The State also got to show the jury a video of Appellant confessing to the charged assault, a damning piece of evidence that it did not have in *James* and the other cases cited by the State in support of its argument that the extraneous-offense

12

evidence was necessary to its case.[4] Taking all of this into account, we cannot agree with the State's argument as to its "need" to prove up the grisly details of the aggravated assault by fire and Jane's injuries. The second factor weighs strongly in favor of Appellant.

We are likewise unpersuaded by the State's argument the third factor—the tendency of the evidence to suggest decision on an improper basis—"weighed slightly or, at most, moderately against admission." Unfair prejudice may be created by the tendency of the evidence to prove some adverse fact not properly in issue or to unfairly excite emotions against the defendant. *Montgomery*, 810 S.W.2d at 378. Here, again, the State's reliance on *James* is misplaced. The State argues that the facts of this case "are similar to, but less severe than, the facts of the *James* case":

> Both cases involved the commission of a felony assault causing bodily injury by striking a family member or a person with whom the defendant had a dating relationship with the defendant's hand. [*See James*, 623 S.W.3d at 539.] But here, in contrast to the numerous severe extraneous offenses offered in *James*, the State offered evidence of only three extraneous offenses, one of which was the jurisdictional enhancement and only one of which is subject to Appellant's complaint on appeal.
>
> The trial court in *James* allowed the complainant to testify about James's control

---

[4]*See Martin v. State*, No. 03-20-00102-CR, 2022 WL 479544, at *11 (Tex. App.—Austin Feb. 17, 2022, no pet.) (mem. op., not designated for publication); *Camacho v. State*, No. 01-20-00282-CR, 2021 WL 2832970, at *7 (Tex. App.—Houston [1st Dist.] July 8, 2021, no pet.) (mem. op., not designated for publication); *Olmedo v. State*, No. 08-18-00114-CR, 2019 WL 6271272, at *7 (Tex. App.—El Paso Nov. 25, 2019, pet. ref'd) (not designated for publication); *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *6 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication).

of her in the relationship, including his tying her up, their drug use, and that she had attempted to commit suicide. *Id.* at 540. The trial court also allowed the State to introduce evidence of specific incidents in which James had forced the complainant to steal to pay for drugs; injured her by busting her lip and hitting her head, resulting in a hospital visit; sexually assaulted her with a broom, resulting in a hospital visit; attempted to break into her sister's home; been arrested for assaulting her, resulting in the issuance of an emergency protective order three days before the charged assault; and sexually assaulted her again the same day he committed the offenses alleged in the indictment. *Id.* We fail to see how the fact that the aggravated assault by fire was one of "only three extraneous offenses"[5] the State got to prove up at the trial on the merits weighs in the State's favor here; if anything, then being one of just three extraneous bad acts made this evidence—which the State appropriately recognizes is "horrific" and "inflammatory"—stand out all the more powerfully to the jury, in contrast to Appellant's other two extraneous assaults on Jane, which involved far less egregious facts.

The State correctly points out that the trial court included instructions in the jury charge restricting the jury's consideration of the extraneous-offense evidence to

---

[5]On direct examination, Jane testified that she met Appellant at a bar. He sent her a drink, and she woke up in a hotel room the next morning with no memory of what had happened the previous night. She further testified that, "years" later, Appellant "finally" admitted that he had put Xanax in her drink. Appellant did not object to this evidence. This was the first of the three extraneous assaults that the State introduced in evidence.

14

admissible purposes—and predicating any such consideration on the condition that the jury find and believe beyond a reasonable doubt that Appellant committed such extraneous offenses "if any were committed"—and that Appellant does not attempt to rebut the presumption that the jury followed this instruction. *Cf. id.* at 549. We must presume that the jury understood and followed the court's charge, absent evidence to the contrary. *See Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012). However, this presumption only lessens the tendency of the evidence to suggest decision on an improper basis; it does not make that tendency go away entirely. We are hard-pressed to conceive of any evidence with greater "potential to impress the jury in some irrational but indelible way" than what we are presented with here. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The jury heard a chilling moment-by-moment account of the aggravated assault by fire from the victim herself, including her testimony of how Appellant failed to offer her any aid or assistance (other than dousing her with water) after setting her on fire, effectively leaving her for dead. Additionally, the jury saw images of Jane's badly burned, bandaged, and bleeding body in the aftermath of the fire, and she testified that her burns still cause her pain. Thus, this factor also weighs in favor of Appellant.

The nature of this extraneous-offense evidence and the prominent part it played in the State's case—relative to other evidence introduced by the State— similarly distinguish Appellant's case from *James* as to *Gigliobianco*'s fourth factor. "Confusion of the issues" alludes to the likelihood that the evidence would confuse

15

the jury or distract them from the case's central issues. *James*, 623 S.W.3d at 550. In *James*, we agreed with the State's contention that "the extraneous-offense evidence did not confuse or distract the jury from the main issues in this case but instead presented the jury with a more complete picture of the cycle of violence between [the appellant] and [the complainant], helping the jury understand" the complainant's behavior. *Id*. The State makes the same contention here, but based on the facts of this case, we have to disagree. The State claims that the evidence of Appellant's aggravated assault by fire helped the jury understand Jane's "decision not to call the police on the day of the offense, her indecision regarding whether to press charges, and her decision to continue visiting Appellant and tell him that she loved him until two weeks before the trial," but it does not explain how. It seems to us that a rational jury would have been all the more bewildered by Jane's behavior following Appellant's latest assault on her after learning that he had previously set her on fire and shown callous indifference as she burned.

However, we do see some similarities between this case and *James*. Like Appellant, "James was arraigned on the charges in the jury's presence; the trial court issued oral and written limiting instructions prescribing how the jury should use the extraneous-offense evidence, if at all; and the jury charge and verdict forms made clear that the jury's job was to determine whether James was guilty or not guilty of the charged offenses." *Id*. With the consideration of these additional facts, this factor weighs only slightly in favor of Appellant.

16

The fifth factor weighs in favor of the State. Rule 403's fourth key phrase, "misleading the jury," refers to a tendency of an item of evidence to be given undue weight by the jury on *other* than emotional grounds. *Gigliobianco*, 210 S.W.3d at 641. Here, Jane's testimony and the photographs of her injuries were not of scientific or technical character, such that the evidence might have been given undue weight by an untrained jury. *See id.* Jane was a lay witness, and none of the extraneous-offense evidence was scientific or complex. *See id.*; *see also James*, 623 S.W.3d at 550.

Finally, the sixth factor looks to the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense. *See Mechler*, 153 S.W.3d at 441. Again, we note that the State spent far more time developing evidence of the aggravated assault by fire and the aftermath, including the physical and psychological injuries to Jane, than developing the evidence of the charged assault. Out of what the State correctly calculates to be "approximately 100 pages of testimony" in the reporter's record, 25 pages comprise Jane's testimony—and the admission of the related photographs and medical records—on direct examination about the aggravated assault by fire. Appellant's cross-examination of Jane about this one extraneous offense took up an additional 9 pages, compared to the few pages he spent on cross- and recross-examination *combined* questioning her about the charged offense. By contrast, the State's direct examination of Jane on the assault charged in this case comprises only a few pages in the reporter's record, and the introduction of the photographs of her injuries from that assault comprise a few

more. Officer Wacasey, the State's only other witness, was effectively a sponsoring witness for her body-camera video. Accordingly, the record before us reflects a prosecutorial emphasis on an extraneous crime, the prejudicial effect of which was to effectively reprosecute Appellant for the extraneous crime, not the crime made the basis of the prosecution and conviction made the basis of this appeal. This factor weighs in favor of Appellant. *Cf. Perez*, 562 S.W.3d at 691 (determining that this factor weighed "slightly in favor of excluding" extraneous-offense testimony that comprised 91 pages of the 600 pages, roughly fifteen percent, of testimony presented to the jury by both sides in the guilt/innocence stage); *Russell v. State*, 113 S.W.3d 530, 546 (Tex. App.—Fort Worth 2003, pet. ref'd) (concluding factor weighed in favor of exclusion of extraneous offense when evidence of extraneous offense amounted to thirty percent of trial).

In conclusion, the extraneous aggravated assault had some inherent probative force, but the State had no need to present the jury with Jane's graphic testimony and accompanying photographs at the trial on the merits. And, while the danger of confusing the issues and misleading the jury was low, the danger of unfair prejudice to Appellant was as high as we can fathom, and the presentation of this evidence consumed an inordinate amount of time at trial. We add that, by effectively making the trial more about Appellant setting Jane on fire than about the charged offense, reasonable inferences may be drawn that the State's theory of admissibility—i.e., to demonstrate the credibility of Jane's testimony and the volatile nature of the

relationship between her and Appellant—was merely pretextual and that the admission of the evidence during the guilt/innocence phase of the trial was intended to try the accused for being a criminal generally and not for the indicted offense. *See, e.g.*, *Walls v. State*, 548 S.W.2d 38, 41 (Tex. Crim. App. 1977). For these reasons, we conclude that the trial court abused its discretion by admitting the extraneous-offense evidence over Appellant's Rule 403 objection.

We further conclude that such error was harmless. Overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Here, the photographs of Jane in Parkland Hospital merely depict what the medical records describe. The medical records from Parkland also contain statements Jane made to medical personnel accusing Appellant of pouring gasoline on her and setting her on fire.[6]

To the extent that Jane's testimony included details about the extraneous offense that the medical records did not, we have fair assurance that this evidence did not influence the jury or that it "had but a slight effect." *Macedo v. State*, 629 S.W.3d

---

[6]While the medical records are voluminous—over 3,500 pages in total—once they were admitted, we presume that the jury saw everything contained therein. *See Air Control Eng'g, Inc. v. Hogan*, 477 S.W.2d 941, 946 (Tex. App.—Dallas 1972, no writ) ("The jury had all of the evidence before it and is presumed to have considered same in arriving at its answers to the issues."). The trial court also instructed the jury to "careful[ly] and impartial[ly] consider[] all the evidence in this case," and it is presumed that a jury follows a trial court's instructions regarding the consideration of evidence. *Barron v. State*, 630 S.W.3d 392, 413 (Tex. App.—Eastland 2021, pet. ref'd).

237, 240 (Tex. Crim. App. 2021) (quoting *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)). Error in the admission of evidence in violation of Rule 403 is generally not constitutional. *Perez*, 562 S.W.3d at 691. Because the error is not constitutional, we apply Rule 44.2(b). Tex. R. App. P. 44.2(b). That rule requires us to disregard any nonconstitutional error that does not affect Appellant's substantial rights. *Id.* A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo*, 629 S.W.3d at 240. In deciding that question, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

While the character of this evidence was such that it likely dominated the

jurors' minds through their deliberations, and the State emphasized the evidence in its closing argument, we cannot ignore the "overwhelming evidence of guilt" that was properly admitted without objection. *Motilla*, 78 S.W.3d 356. Jane testified that in the instant case, Appellant backhanded her in her face, causing her to fall backward and hit the concrete in the garage. She remembered her ear ringing, her face swelling up "really bad[ly]," and crying as Appellant's grandmother put ice on her face. Officer Wacasey testified that Jane's story about what had happened never changed. The jury saw a video of Appellant confessing to hitting his wife in the face and stating that she had "a big old knot on the side of her head." Evincing a consciousness of his guilt, he also told Officer Wacasey that this assault would be a felony because of his prior conviction for assaulting Jane. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). At trial, Appellant stipulated to this prior conviction, and court records proving it up were admitted in evidence, as were photographs of Jane's injuries. This uncontradicted evidence proved all the elements of the charged offense.

Finally, in its jury charge, the trial court gave the jury an instruction limiting its consideration of any extraneous-offense evidence, and we presume that the jury followed this instruction. *Perez*, 562 S.W.3d at 694. We conclude that, in the context of the entire case against Appellant, any preserved error in admitting evidence of the aggravated assault by fire did not have a substantial or injurious effect on the jury's

21

verdict and did not affect Appellant's substantial rights.[7] *See King*, 953 S.W.2d at 271–73. Thus, we must disregard any such error. *See* Tex. R. App. P. 44.2(b). We overrule both of Appellant's issues.

## III. Conclusion

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered: November 23, 2022

---

[7]Appellant does not complain that the extraneous-offense evidence of the aggravated assault by fire would have been inadmissible at the *punishment* stage of his trial. This is appropriate, as the State would have had to prove up the prior aggravated assault to support the punishment enhancement alleged in the indictment. *See* Tex. Penal Code Ann. § 12.42(a) (explaining proof necessary to support punishment for a second-degree felony on the trial of a third-degree felony). Further, once a defendant has been convicted, punishment evidence may be offered "as to any matter the court deems relevant to sentencing, *including but not limited to the prior criminal record of the defendant*, [as well as] *any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt . . . to have been committed by the defendant*." Tex. Code Crim Proc. Ann. art. 37.07 § 3(a)(1) (emphasis added). In sum, based on the rationale of our harm analysis, and because the evidence of the extraneous aggravated assault would have been admissible at the trial on punishment, we conclude that the ultimate outcome of Appellant's trial—his conviction and sentence—would have been the same had the State not introduced the objected-to evidence until the trial on punishment.